ROBERT CHARLES, Adm'r of the Estate of Lynn Sue Charles, Deceased, Appellee, v. ALAN SEIGFRIED, Appellant.—PAULA L. BZDEK, a Minor, by Her Father and Next Friend, Robert J. Bzdek, Appellee, v. SUSAN M. TOWNSLEY et al., Appellants.

*Opinion filed March 30, 1995.—Rehearing denied May 30, 1995.*

McMORROW, J., joined by HARRISON, J., dissenting.

Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of Ottawa (Michael T. Reagan and Michael C. Jansz, of counsel), for appellant.

Stephen B. Morris, of Hamilton, for appellee.

Steven L. Larson, John W. Barbian and Linda E. Spring, of Wildman, Harrold, Allen & Dixon, of Waukegan, for appellants.

Baskin, Server, Berke, Weinstein & Spiro, of Chicago (John R. Malkinson, of counsel), for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

In these two, consolidated appeals, the plaintiffs ask this court to recognize a cause of action against social hosts for serving alcoholic beverages to minors who are subsequently injured. Both appeals arise from a circuit court dismissal of the plaintiff's complaint. The circuit courts held that, according to long-established precedent, social host liability does not exist in Illinois. For the reasons stated below, we now confirm this precedent and decline to give birth to any form of social host liability.

## FACTS

In cause number 76617, the plaintiff, Robert Charles, as administrator of the estate of Lynn Sue Charles, brought an action against the defendant, Alan Seigfried, in the circuit court of Hancock County. Lynn Sue Charles was killed in an automobile accident in the

early morning hours of February 16, 1991. Charles sought recovery for her death.

Charles' second-amended complaint alleged that Seigfried hosted a social gathering at his rural home on the evening of February 15, 1991. Lynn Sue, 16 years of age, attended the party. The complaint charged that Seigfried served alcoholic beverages to Lynn Sue and to other underage persons at the party. Lynn Sue became intoxicated. She then departed Seigfried's home by driving her own automobile. Lynn Sue had a blood-alcohol content of 0.299 at the time of her death.

Charles' second-amended complaint was premised on theories of social host liability. Count I claimed that Seigfried breached his common law duty of reasonable care. Count II alleged that a civil action arose from Seigfried's violation of section 6—16(c) of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1991, ch. 43, par. 131(c) (now 235 ILCS 5/6—16(c) (West 1992))). The circuit court dismissed the complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) for failure to state a cause of action. The appellate court reversed the dismissal and created a cause of action against social hosts who knowingly serve alcoholic beverages to minors. (251 Ill. App. 3d 1059.) In doing so, the appellate court acknowledged that it was departing from precedent. (251 Ill. App. 3d at 1063.) We allowed Seigfried's petition for leave to appeal (145 Ill. 2d R. 315(a)).

In cause number 77438, the plaintiff, Paula L. Bzdek, a minor, by her father and next friend, Robert J. Bzdek, filed suit against the defendants, Susan M. Townsley and Nicki Townsley, in the circuit court of Lake County. Bzdek was injured in an accident while she was a passenger in a motor vehicle driven by David Duff, 18 years of age. Bzdek sought recovery for permanent injuries that she sustained.

Bzdek's second-amended complaint alleged that, on or about September 15, 1990, the Townsleys hosted a social gathering at their home in Wildwood, Illinois. Bzdek, age 15, attended the party, as did Duff. The complaint charged that the Townsleys furnished alcoholic beverages to Bzdek, Duff, and to several other underage persons. Bzdek and Duff became intoxicated. Bzdek left the Townsley home in the vehicle driven by Duff while he was still drunk. According to the complaint, Bzdek allowed herself to be transported by Duff due to her own inebriation. Duff lost control of the vehicle and crashed into oncoming traffic.

Both counts of Bzdek's second-amended complaint were based on theories of social host liability. Count I charged that the Townsleys negligently served intoxicants to Duff, a driver under the legal drinking age of 21. Count II alleged that they negligently served alcoholic beverages to Bzdek, a minor whose own drunkenness caused her to allow herself to be a passenger in Duff's vehicle. The circuit court dismissed the complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) for failure to state a cause of action. The appellate court reversed, finding that social hosts can be held liable under the facts alleged in Bzdek's complaint. (262 Ill. App. 3d 238.) The appellate court extended social host liability beyond the negligent service of alcoholic beverages to minors. (262 Ill. App. 3d at 244-46.) It reasoned that, where social hosts knowingly serve intoxicants to minors *and* to persons under the legal drinking age of 21, they can be held liable for injuries caused by the persons under age 21. (262 Ill. App. 3d at 244-46.) We allowed the Townsleys' petition for leave to appeal (145 Ill. 2d R. 315(a)).

## ANALYSIS

The standard of review on appeal from a motion to dismiss a complaint under section 2—615 is whether the

complaint alleges sufficient facts which, if proved, would entitle the plaintiff to relief. *Urbaitis v. Commonwealth Edison* (1991), 143 Ill. 2d 458, 475.

For over one century, this court has spoken with a single voice to the effect that no social host liability exists in Illinois. The discussion below demonstrates that it has been, and continues to be, well-established law that Illinois has no common law cause of action for injuries arising out of the sale or gift of alcoholic beverages; that the legislature has preempted the field of alcohol-related liability; and that any change in the law governing alcohol-related liability should be made by the General Assembly, or not at all.

I

THE HISTORY OF ALCOHOL-RELATED LIABILITY

*A. The Common Law Rule and the Dramshop Act*

The historic common law rule, adhered to in this State, is that there is no cause of action for injuries arising out of the sale or gift of alcoholic beverages. The rationale underlying the rule is that the drinking of the intoxicant, not the furnishing of it, is the proximate cause of the intoxication and the resulting injury. (See *Cunningham v. Brown* (1961), 22 Ill. 2d 23, 29-30.) As a matter of public policy, the furnishing of alcoholic beverages is considered as too remote to serve as the proximate cause of the injury.

As set forth later in this opinion, our courts have consistently adhered to the rule that there is no common law cause of action against *any provider* of alcoholic beverages for injuries arising out of the sale or gift of such beverages. The Illinois legislature, however, created a limited statutory cause of action when it enacted the original Dramshop Act of 1872 in response to a great wave of temperance reform that swept the nation. (*Cun-*

*ningham*, 22 Ill. 2d at 27, quoting 4 Bogart & Thompson, A Centennial History of Illinois 42-44 (1920).) The original act imposed liability upon dramshops for selling or giving intoxicating liquors to persons who subsequently injure third parties. (Laws of 1871-72, at 552-56.) The present act, titled the Liquor Control Act of 1934 (Ill. Rev. Stat. 1991, ch. 43, par. 93.9 *et seq.* (now 235 ILCS 5/1—1 *et seq.* (West 1992))) grants a similar cause of action to injured third parties (Ill. Rev. Stat. 1991, ch. 43, par. 135 (now 235 ILCS 5/6—21 (West 1992))). (Section 6—21 is commonly known as the Dramshop Act and will hereinafter be referred to as such.) The Dramshop Act has never imposed liability predicated on negligence or fault; rather, it imposes a form of "no-fault" liability. (*Nelson v. Araiza* (1978), 69 Ill. 2d 534, 538-39.) This court has interpreted the Dramshop Act as not imposing liability upon social hosts.

*Cruse v. Aden* (1889), 127 Ill. 231, is the seminal decision regarding both the common law rule and the absence of social host liability under the Dramshop Act. There, a wife filed suit against a friend of her husband. The friend had given her husband two drinks of intoxicating liquor while he was a guest at the friend's home. The husband, upon returning home on horseback, was thrown from the horse and died.

The wife argued that a common law right of action existed before the Dramshop Act of 1872 was enacted, and that the Dramshop Act simply saved and even enlarged the remedies already available. The *Cruse* court expressly rejected these notions, stating:

"It was not a tort, at common law, to either sell or give intoxicating liquor to 'a strong and able-bodied man,' and it can be said safely, that it is not anywhere laid down in the books that such act was ever held, at common law, to be culpable negligence, that would impose legal liability for damages upon the vendor or donor of such liquor. The present suit can in no sense be regarded as an action of tort at common law." *Cruse*, 127 Ill. at 234.

The *Cruse* court therefore concluded that any cause of action the wife had was purely statutory, wholly dependent upon the proper construction of the Dramshop Act. (*Cruse*, 127 Ill. at 234.) The court held that the Dramshop Act only created a cause of action against those engaged in the liquor trade. (*Cruse*, 127 Ill. at 239.) No cause of action was "intended to be given against a person who, in his own house, or elsewhere, gives a glass of intoxicating liquor to a friend as a mere act of courtesy and politeness." (*Cruse*, 127 Ill. at 239.) *Cruse* therefore laid down the rule that no social host liability exists under the common law or the Dramshop Act.

### B. Legislative Preemption

Many years later, in *Howlett v. Doglio* (1949), 402 Ill. 311, this court reaffirmed its holdings in *Cruse*. The *Howlett* court further explained that the liability imposed under the Dramshop Act "is of statutory origin, and is expressly and exclusively defined" therein. *Howlett*, 402 Ill. at 318.

*Cunningham v. Brown* (1961), 22 Ill. 2d 23, then firmly established the rule of law that, in Illinois, the General Assembly has preempted the entire field of alcohol-related liability through its passage and continual amendment of the Dramshop Act. There, the plaintiffs filed suit against tavern operators who had served intoxicants to their husband and father, who thereafter became despondent and took his own life. The plaintiffs argued that, in addition to a claim under the Dramshop Act, the following remedies were available to them: (1) a civil action for a violation of a section of the Liquor Control Act that prohibited the sale, gift or delivery of alcoholic liquor " 'to any intoxicated person or to any person known *** to be an habitual drunkard, spendthrift, insane, mentally ill, mentally deficient or in need of mental treatment' " (*Cunningham*, 22 Ill. 2d at 24, quoting Ill. Rev. Stat. 1957, ch. 43,

par. 131); and (2) a common law action against tavern operators who knowingly supply intoxicating liquor to a consumer who has no volition with regard to consuming the intoxicant. The plaintiffs' contention was that this court should recognize a new cause of action where a tavern operator sells liquor to an already intoxicated or insane person. In these instances, the plaintiffs maintained, the incapacity of the consumer to choose is known to the vendor and, therefore, the sale of the liquor in reality becomes the proximate cause of the intoxication. The *Cunningham* court rejected all the plaintiffs' arguments and refused to create any cause of action beyond those explicitly provided for in the Dramshop Act. (*Cunningham*, 22 Ill. 2d at 30-31.) It held that the Dramshop Act provides the exclusive remedy against tavern owners and operators for alcohol-induced injuries. *Cunningham*, 22 Ill. 2d at 30-31.

Since *Cunningham*, this court has frequently reiterated the rule that a dramshop cause of action is *sui generis* and exclusive. (*Hopkins v. Powers* (1986), 113 Ill. 2d 206, 211; *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 440-44; *Demchuk v. Duplancich* (1982), 92 Ill. 2d 1, 5; *Graham v. General U.S. Grant Post No. 2665* (1969), 43 Ill. 2d 1, 7.) Accordingly, this court has consistently refused to recognize any cause of action for alcohol-related liability beyond those explicitly provided for in the Dramshop Act. (*Wimmer*, 108 Ill. 2d at 440-44; *Graham*, 43 Ill. 2d at 8; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 76-77, 79; *Cunningham*, 22 Ill. 2d 23; *Cruse*, 127 Ill. 231.) In doing so, this court has rejected all theories of liability advanced by plaintiffs, including those based upon the Dramshop Act itself, upon common law negligence, or upon certain prohibited sales and activities within the Liquor Control Act of 1934. *Wimmer*, 108 Ill. 2d 435 (rejecting theories based upon the common law and the Dramshop Act); *Graham*, 43 Ill. 2d 1 (reject-

ing theories based upon the Dramshop Act and the common law); *Knierim*, 22 Ill. 2d 73 (rejecting theories based upon certain prohibited sales in the Liquor Control Act and the common law); *Cunningham*, 22 Ill. 2d 23 (same); *Cruse*, 127 Ill. 231 (rejecting theories based upon the common law and the Dramshop Act).

As a result, few rules of law are as clear as that no liability for the sale or gift of alcoholic beverages exists in Illinois outside of the Dramshop Act. Our appellate court has generally adhered to this fundamental rule and has declined to create a new cause of action, regardless of whether the case involved adults, underage persons, or minors; liquor vendors or social hosts. See, *e.g.*, *Estate of Ritchie v. Farrell* (1991), 213 Ill. App. 3d 846 (social host furnished alcohol to a minor); *Goodknight v. Piraino* (1990), 197 Ill. App. 3d 319 (vendor allowed alcohol to be furnished to an underage person); *Flory v. Weaver* (1990), 196 Ill. App. 3d 149 (social host furnished alcohol to minors); *Martin v. Palazzolo Produce Co.* (1986), 146 Ill. App. 3d 1084 (social host furnished alcohol to a minor); *Zamiar v. Linderman* (1985), 132 Ill. App. 3d 886 (social host furnished alcohol to a minor); *Heldt v. Brei* (1983), 118 Ill. App. 3d 798 (social hosts permitted son to serve alcohol to friends); *Thompson v. Trickle* (1983), 114 Ill. App. 3d 930 (social host furnished alcohol to an adult); *Ruth v. Benvenutti* (1983), 114 Ill. App. 3d 404 (vendor sold alcohol to a minor); *Coulter v. Swearingen* (1983), 113 Ill. App. 3d 650 (minor social host furnished alcohol to a minor); *Gora v. 7-11 Food Stores* (1982), 109 Ill. App. 3d 109 (vendor sold alcohol to a minor); *Lowe v. Rubin* (1981), 98 Ill. App. 3d 496 (social host furnished alcohol to a minor); *Miller v. Moran* (1981), 96 Ill. App. 3d 596 (social hosts furnished alcohol to an adult); *Camille v. Berry Fertilizers, Inc.* (1975), 30 Ill. App. 3d 1050 (social host furnished alcohol to an adult); *Shepherd v. Marsaglia*

(1961), 31 Ill. App. 2d 379 (vendors sold alcohol to an underage person); see also *Fitzpatrick v. Carde Lounge, Ltd.* (1992), 234 Ill. App. 3d 875 (vendors sold alcohol to a minor). But see *Cravens v. Inman* (1991), 223 Ill. App. 3d 1059; *Colligan v. Cousar* (1963), 38 Ill. App. 2d 392 (discovering a common law cause of action for furnishing liquor to an intoxicated person), *overruled by Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 442.

The plaintiffs in the present appeal now ask us to recognize a common law cause of action where a social host serves alcoholic beverages to a minor. In this situation, the plaintiffs maintain, the incapacity of the minor to perceive and protect oneself from the harm associated with consuming intoxicants is known to the social host. Therefore, the furnishing of the liquor is the proximate cause of the intoxication and the injury. The premise of their argument is that minors are a protected class, as the law recognizes their incapability to understand the consequences of consuming alcoholic beverages by forbidding it.

The plaintiffs' argument fails. All binding precedent on the subject teaches us that the General Assembly has preempted the entire field of alcohol-related liability through its passage and continual amendment of the Dramshop Act. (*Hopkins*, 113 Ill. 2d 206; *Wimmer*, 108 Ill. 2d 435; *Demchuk*, 92 Ill. 2d 1; *Graham*, 43 Ill. 2d 1; *Cunningham*, 22 Ill. 2d 23; *Howlett*, 402 Ill. 311; *Cruse*, 127 Ill. 231.) We are persuaded that the prior decisions of this court are correct and control the appeal *sub judice*. Legislative preemption in the field of alcohol-related liability extends to social hosts who provide alcoholic beverages to another person, whether that person be an adult, an underage person, or a minor. Therefore, the plaintiffs have no cause of action against their social hosts, as the Dramshop Act does not provide for one.

## II

### STARE DECISIS

*Stare decisis* is a policy of the courts to stand by precedent and leave settled points of law undisturbed. Decisions that have been established for a long period of years should, in the orderly administration of justice, be deemed controlling unless and until the General Assembly provides otherwise. *Kinsey Distilling Sales Co. v. Foremost Liquor Stores, Inc.* (1958), 15 Ill. 2d 182, 188.

As discussed above, for over one century, this court has construed the Dramshop Act as inapplicable to a social host situation, and as providing the exclusive remedy for injuries resulting from the sale or gift of alcoholic beverages. The General Assembly has amended the Dramshop Act more than one dozen times over the years (see 235 ILCS Ann. 5/6—21, Historical & Statutory Notes, at 294-96 (West 1993)), but has never altered these interpretations. From this history it is apparent that the legislature has acquiesced in the court's construction of the statute, which has by now become part of the fabric of the Dramshop Act. (*Miller v. Lockett* (1983), 98 Ill. 2d 478, 483; see *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324, 336 (holding that considerations of *stare decisis* weigh more heavily where a prior judicial construction of a statute is involved).) A departure from the rules of preemption and against social host liability would now amount to an amendment of the statute itself. (*Froud*, 98 Ill. 2d at 336.) Consequently, we decline the plaintiffs' invitation to depart from all prior precedent in favor of their position. We do not today hold that we are powerless to change the law. After careful and considered judgment, we hold only that adhering to *stare decisis* is the wisest course of action for reasons explained in this opinion.

## III
## PUBLIC POLICY AND JUDICIAL RESTRAINT

Ultimately, the question of whether to depart from precedent in order to recognize a negligence cause of action against social hosts who serve alcoholic beverages to minors is a public policy determination. (See W. Keeton, Prosser & Keeton on Torts § 41, at 264 (5th ed. 1984) (explaining that proximate cause is merely the boundary set to liability for the consequences of any act, which is based upon "some social idea of justice or policy").) There are many compelling reasons to defer to the legislature on this policy matter of profound consequence.

The primary expression of Illinois public and social policy should emanate from the legislature. This is especially true regarding issues like the present one, where there is disagreement on whether a new rule is warranted. The members of our General Assembly, elected to their offices by the citizenry of this State, are best able to determine whether a change in the law is desirable and workable.

Any decision to expand civil liability to social hosts should be made only after a thorough analysis of the relevant considerations. The General Assembly, by its very nature, has a superior ability to gather and synthesize data pertinent to the issue. It is free to solicit information and advice from the many public and private organizations that may be impacted. Moreover, it is the only entity with the power to weigh and properly balance the many competing societal, economic, and policy considerations involved. These considerations include such issues as whether sufficient remedies are already available to injured parties through their own insurance and the cause of action they have against the intoxicated driver who caused the accident, the effect on homeowners' and renters' insurance policies and rates,

whether the social hosts' liability should be limited, and what standards of conduct should govern social hosts.

This court, on the other hand, is ill-equipped to fashion a law on this subject that would best serve the people of Illinois. We can consider only one case at a time and are constrained by the facts before us. Moreover, if we were to undertake to change the rules concerning alcohol-related liability, the law would be in a confused, disorderly state for many years while the trial courts attempted to predict how this court would eventually resolve these questions.

If this court were to adopt social host liability, then we would also be faced with determining which of the many possible permutations to follow. Should only injured third parties have a cause of action against a social host, or should the intoxicated person have one too? Should an exception be created only for minors? If so, should we treat persons under the legal drinking age of 21 as minors, or only those under the age of 18? Should minor or underage social hosts be liable for serving liquor to their similarly situated friends? Should a social host be held liable only when he or she knows that the intoxicated person will drink and drive, or should the host be held liable for all types of alcohol-induced injuries? What actions must a social host take to avoid liability where an intoxicated guest insists on driving home? Is calling a cab sufficient, or must the police be notified? The flood of injured litigants that would inevitably crowd the Illinois courts would demand answers to these questions and many others. The General Assembly is clearly the entity best able to resolve such issues comprehensively.

Another factor that compels us to exercise judicial restraint is that any common law liability that we create against social hosts would be unlimited. In contrast, the civil liability of liquor vendors under the Dramshop Act is limited to $30,000 for each compensable injury, or

$40,000 for the loss of support. (235 ILCS 5/6—21(a) (West 1992).) To expose a social host to a much greater liability than the profiting liquor vendor is incomprehensible to us. Shall we force the people of Illinois to obtain liquor licenses in order to insulate themselves from unlimited liability for serving drinks in their home? We think not.

The plaintiffs argue that we must judicially recognize social host liability where an adult furnishes alcoholic beverages to a minor in keeping with a national trend. The dissent agrees with the plaintiffs, claiming that 26 States have adopted the view which it endorses. (See 165 Ill. 2d at 516 and Appendix to Dissent.) An analysis of the law of other jurisdictions reveals otherwise. First, neither Louisiana nor Delaware has adopted social host liability, as the dissent claims. The cited Louisiana case stands only for the proposition that a minor social host owes no duty to refrain from serving beer to another minor. (See Appendix to Dissent, citation for Louisiana.) The holding in the cited Delaware case was specifically limited to a safe workplace rationale (see Appendix to Dissent, citation for Delaware), and subsequent decisions suggest that social host liability will not be adopted in Delaware (*McCall v. Villa Pizza, Inc.* (Del. 1994), 636 A.2d 912; *Oakes v. Megaw* (Del. 1989), 565 A.2d 914; *Samson v. Smith* (Del. 1989), 560 A.2d 1024). Of much greater significance, however, we note that six States referred to in the dissent's appendix have allowed only *third parties* to recover from social hosts for injuries caused by minor drunk drivers (see Appendix to Dissent, citations for Arizona, Colorado, Georgia, Idaho, Indiana, and Utah), unlike the dissent, which would allow the intoxicated minors themselves to recover (see 165 Ill. 2d at 507). There are other differences. Three States limit the amount of damages that can be recovered from a social host to $250,000 or less (see Appendix to Dissent,

citations for Colorado, Maine, and Utah), unlike the dissent which would allow unlimited recovery. Further, the dissent insists that this court must adopt social host liability where adults serve alcoholic beverages to minors, yet in four States, it was the legislature, and not the courts, that first endorsed the concept. (See Appendix to Dissent, citations for Alabama, Maine, Utah, and New York.) In fact, the Alabama Supreme Court specifically held that there is *no common law* cause of action in cases such as this (*Martin v. Watts* (Ala. 1987), 508 So. 2d 1136, 1141); this holding is in direct conflict with the dissent's position. We further note that the very existence of a dramshop act in a jurisdiction will impact the law of that State. (See *Martin*, 508 So. 2d at 1168-69 (Houston, J., concurring in part and dissenting in part) (noting that the very existence of a dramshop act constitutes a substantial argument against judicial adoption of social host liability).) Given all of the foregoing, we are unpersuaded by this new-trend argument. We further note that an examination of today's headlines shows that the current trend in the Illinois General Assembly and the United States Congress is not towards expanding and creating causes of action, but towards limiting and eliminating them. See, *e.g.*, Pallasch, *To Cap or Not to Cap: The Tort Battle of '95*, Chicago Lawyer 1 (March 1995) (documenting trends).

In any event, we are of the view that our decision should be grounded upon the law of Illinois rather than upon contradictory trends elsewhere. Illinois' long history of legislative preemption of all alcohol-related liability makes it especially appropriate for us to defer to the legislature once again. In so deferring to legislative judgment on this issue of whether to impose social host liability upon adults who serve alcoholic beverages to minors, we find that we are not alone. *Bankston v. Brennan* (Fla. 1987), 507 So. 2d 1385; *Winters v. Silver Fox*

*Bar* (1990), 71 Haw. 524, 797 P.2d 51; *Johnston v. KFC National Management Co.* (1990), 71 Haw. 229, 788 P.2d 159; *Ling v. Jan's Liquors* (1985), 237 Kan. 629, 703 P.2d 731; *Hebb v. Walker* (1988), 73 Md. App. 655, 536 A.2d 113; see also *Pelzek v. American Legion* (1990), 236 Neb. 608, 463 N.W.2d 321; *Hinegardner v. Marcor Resorts* (1992), 108 Nev. 1091, 1094-95, 844 P.2d 800, 803; Bradley, *Social Host Liability in Illinois: An Exception for Minors?*, 81 Ill. B.J. 362, 366 (1993) (concluding that this court should defer to the legislature on whether to impose social host liability for serving alcoholic beverages to minors).

## IV

## LEGISLATIVE ACTION

We note that the General Assembly has responded well to the problem of underage drunk driving by enacting various statutory provisions aimed to stop it. The legislature's actions have been effective. Statistics show that the total number of alcohol-related crash fatalities in Illinois has dramatically declined since 1982. (DUI Prevention Unit, Office of the Secretary of State (September 1994 pamphlet) (reporting a 35% decrease in the total number of alcohol-related crash fatalities from 1982 to 1993).) There has also been a substantial decrease in the percentage of Illinois underage drivers who are killed as a result of their own alcohol consumption. (DUI Prevention Unit, Office of the Secretary of State (October 1994 pamphlet) (reporting that, in 1993, 32% of tested underage drivers who had been killed had been drinking at the time of their death, down from 48% in 1990).) Moreover, Illinois has been rated first out of all 50 states for its efforts to curb drunk driving by two groups, Mothers Against Drunk Driving and Advocates for Highway and Auto Safety. Dvorak, *Illinois' DUI Effort Rated No. 1,* Chic. Trib., November 29, 1993.

Despite its successes, the General Assembly continues to lead vigorously the fight against underage drunk driving. Its legislation appropriately targets both the adults who provide alcoholic beverages to underage persons and the underage persons themselves. For example, the General Assembly recently stiffened the criminal penalties for adults who illegally provide alcoholic beverages to underage persons. (Pub. Act 88—613, eff. January 1, 1995 (amending 235 ILCS 5/6—16 (West 1992)).) It also recently enacted a "zero-tolerance" law that provides for the automatic suspension of the driving privileges of underage persons who are found operating a motor vehicle with *any* alcohol in their system. (Pub. Act 88—588, eff. January 1, 1995 (adding 625 ILCS 5/11—501.8).) The impact of these new laws remains to be seen.

The plaintiffs maintain that we should create a civil cause of action where the social host has violated section 6—16(c) of the Liquor Control Act, which provides:

"(c) Any person shall be guilty of a petty offense where he or she knowingly permits a gathering at a residence which he or she occupies of two or more persons where any one or more of the persons is under 18 years of age and the following factors also apply:

(1) the person occupying the residence knows that any such person under the age of 18 is in possession of or is consuming any alcoholic beverage; and

(2) the possession or consumption of the alcohol by the person under 18 is not otherwise permitted by this Act; and

(3) the person occupying the residence knows that the person under the age of 18 leaves the residence in an intoxicated condition." (Ill. Rev. Stat. 1991, ch. 43, par. 131(c) (now 235 ILCS 5/6—16(c) (West 1992)).)

The plaintiffs argue that to recognize civil liability against social hosts in these situations would be consistent with legislative intent. We disagree.

Since 1986, the General Assembly has considered imposing various forms of social host liability upon adults who furnish alcohol to underage persons at least six times. In all instances, the attempt to create the new cause of action was rejected. 88th Ill. Gen. Assem., Senate Bill 1328, 1994 Sess.; 88th Ill. Gen. Assem., House Bill 3095, 1994 Sess.; 87th Ill. Gen. Assem., House Bill 2815, 1992 Sess.; 86th Ill. Gen. Assem., House Bill 319, 1989 Sess.; 85th Ill. Gen. Assem., House Bill 2707, 1988 Sess.; 84th Ill. Gen. Assem., House Bill 738, 1985 & 1986 Sessions.

Senate Bill 1328 represents the legislature's most recent opportunity to consider the issue. One portion of the bill, as originally proposed, would have added a new section 6—21.1 to the Liquor Control Act as follows:

"Sec. 6—21.1. Liability of persons supplying liquor to persons under 21. A person who is injured, in person or property, by an intoxicated person under the age of 21 has a right of action in his or her own name, severally or jointly, for damages (including reasonable attorney fees and expenses) against any person:

(i) who, by selling, giving, or delivering alcoholic liquor in violation of this Act, causes, or contributes to, the intoxication of the person under the age of 21;

(ii) who, by permitting consumption of alcoholic liquor in violation of this Act, causes, or contributes to, the intoxication of the person under the age of 21; or

(iii) who causes the injury and had become intoxicated by consuming alcoholic liquor in violation of this Act.

An action for damages under this Section is barred unless commenced within 2 years after the right of action arises." (88th Ill. Gen. Assem., Senate Bill 1328, 1994 Sess., at 5.)

As can be seen from its plain language, this provision would have provided for civil liability against any person selling, giving, or delivering alcoholic beverages to an underage person if that underage person subsequently caused injury to any person or his or her property. This provision was deleted by Senate Amendment

No. 1. (Legislative Synopsis & Digest, 88th Ill. Gen. Assem., Senate Bill 1328, 1994 Sess.) An attempt by the House to reinsert the provision was defeated by the committee to which it was referred and never went beyond that committee. (Legislative Synopsis & Digest, 88th Ill. Gen. Assem., Senate Bill 1328, 1994 Sess.) The bill was enacted into law without the civil liability provision. See Pub. Act 88—613, eff. January 1, 1995.

The other bills proposed creating a similar cause of action. House Bill 3095 proposed an amendment to the Liquor Control Act, identical to the civil liability provision quoted above. (88th Ill. Gen. Assem., House Bill 3095, 1994 Sess.) House Bill 2815 would have created a statutory cause of action against social hosts, age 21 or older, who knowingly provide liquor to persons under 21 years of age who subsequently cause injuries to themselves or others while operating a motor vehicle, if the underage person was found to have a blood-alcohol content of 0.04 or greater after causing the injuries. (87th Ill. Gen. Assem., House Bill 2815, 1992 Sess.) House Bill 319 proposed creating social host liability where persons over age 21 knowingly provided liquor to persons under age 21, but, significantly, it subjected the action to the same limits of recovery that apply to commercial suppliers. (86th Ill. Gen. Assem., House Bill 319, 1989 Sess.) House Bill 2707 would have amended the Dramshop Act to provide a dramshop cause of action against both vendors and social hosts for serving liquor to underage persons who subsequently injure third persons. (85th Ill. Gen. Assem., House Bill 2707, 1988 Sess.) House Bill 738 proposed imposing dramshop liability upon adults who provide liquor to minors in private homes. (84th Ill. Gen. Assem., House Bill 738, 1985 & 1986 Sessions.) None of the bills passed, as most were tabled or died in committee.

Arguably, the General Assembly did adopt a very limited form of social host liability where an adult pays

for a facility to be utilized for underage drinking. The relevant statute provides:

"[A]ny person at least 21 years of age who pays for a hotel or motel room or facility knowing that the room or facility is to be used by any person under 21 years of age for the unlawful consumption of alcoholic liquors and such consumption causes the intoxication of the person under 21 years of age, shall be liable to any person who is injured in person or property by the intoxicated person under 21 years of age." 235 ILCS 5/6—21(a) (West 1992).

The preceding discussion shows that, with perhaps one minor exception, the General Assembly has deliberately chosen *not* to impose social host liability upon adults who provide alcoholic beverages to persons under the legal drinking age. Certainly, given these clear refusals, we cannot now conclude that grafting social host liability onto section 6—16(c) (or any other section) of the statute would conform with legislative intent. (See *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324, 336.) Such an interpretation would be tantamount to judicial gymnastics.

The foregoing review of legislative action reveals that the General Assembly has acted responsibly and effectively to curb the problem of underage drunk driving. In attacking the problem, the General Assembly has, thus far, deliberately chosen not to create civil liability against social hosts who serve alcoholic beverages to minors. Judicial action in the face of these legislative decisions would be ill-advised.

## V

The dissent would embrace this new form of civil liability. In support, the dissent chiefly relies on an appellate court decision that Justice McMorrow herself wrote while sitting on the appellate bench, *Cravens v. Inman* (1991), 223 Ill. App. 3d 1059. *Cravens* was an attempt to change the settled law of this State. We do not agree that the views set forth in *Cravens* should be adopted

through judicial decision, for all the reasons set forth above. Nevertheless, the dissent raises several points that merit discussion.

The dissent maintains that the judiciary must adopt social host liability because to do otherwise "completely forsakes" the victims of underage drunk driving. (165 Ill. 2d at 520.) Moreover, the dissent claims, to refuse to recognize this doctrine "imposes on taxpayers the unwarranted and tremendous tax burden" of paying for injuries and deaths caused by underage drunk driving. 165 Ill. 2d at 520.

The dissent's statements do not withstand scrutiny. The victims of underage drunk driving have always had, and will continue to have, a civil remedy. They can sue the drunk driver, who is undoubtedly at fault. We have not been presented with any evidence to suggest that this civil remedy is insufficient. We also have not been presented with any evidence to support the dissent's claim that taxpayers are burdened by the status quo. The legislature is in fact the only entity capable of determining if this is true and, if it is, of devising a solution to eliminate the taxpayers' burden.

The dissent also suggests that the recognition of social host liability can be limited to those situations where an adult social host permits a minor to drink to the point of intoxication, permits the minor to leave in a vehicle, and the minor or a third party is injured in an alcohol-related car accident. (165 Ill. 2d at 521.) We cannot agree.

We are realistic enough to know that in virtually every instance where an underage driver is involved in an alcohol-related car accident, a clever plaintiff's attorney would drag into court any and all adults who may qualify as a social host. The focus at trial would then shift from the drunk driver to the alleged social hosts. Accidents following a wedding, for example, would

include the typical targets of the bride, the groom, the parents of the bride and groom, the servers, and anyone else who may have handed the underage person a drink. Ironically, these "social hosts" could be held responsible for the underage person's drinking even if that person's parents were also in attendance. Courts and jurors would then be faced with evaluating the social host's conduct. For example: Did the social host do enough to stop the underage drinker from his or her own illegal actions? Did the host check identification to determine the guests' ages? Should the host have allowed the guests to serve themselves? Should the host have allowed underage persons to be present? Could the host have done more to prevent a guest's departure? Did the host know that the guest was visibly or obviously intoxicated? We are unwilling to open up this "Pandora's Box" of unlimited liability through judicial decision. If civil liability is to be imposed in these situations, the legislature should carefully delineate the standards of conduct expected of social hosts.

The dissent also mistakenly claims that legislative preemption has no application here because minors are involved. This distinction, however, is simply an attempt to avoid the clear import of this court's past decisions. As earlier noted, this court has repeatedly held that there is *no* common law cause of action for injuries arising out of the sale or gift of alcoholic beverages; only those causes of action that are explicitly provided for in the Dramshop Act are available in Illinois. Until *Cravens*, the appellate court consistently applied these clear principles to *all* cases involving minors and underage drinkers. See 165 Ill. 2d at 490-91 (cases cited).

The dissent agrees that the General Assembly's actions to curb underage drunk driving have been "considerable and commendable." (165 Ill. 2d at 518.) Yet the dissent then claims, inconsistently in our view, that the

courts and legislature are in a stalemate regarding this issue. (165 Ill. 2d at 513.) Our prior review of the extensive legislative action in this area reveals that no such stalemate exists. Our legislature has taken a leadership role in determining what weapons to utilize in its war against underage drunk driving and has experienced considerable success, which is evidenced by statistics. Thus far, it has chosen not to adopt the position favored by the dissent. We are confident that the legislature will continue to re-evaluate the law in this area to determine if adjustments are necessary.

Lastly, the dissent quotes extensively from an *amicus curiae* brief that was filed in the appellate court in *Cravens*. We feel compelled to point out that no such *amicus curiae* brief was filed in this court.

## CONCLUSION

For the reasons expressed in this opinion, we decline to create any form of social host liability. The question of whether, and to what extent, social host liability should be imposed in Illinois is better answered by the legislature. The judgments of the appellate court are reversed, and the circuit courts' dismissals of the complaints for failure to state a cause of action are affirmed.

*No. 76617—Appellate court reversed; circuit court affirmed.*
*No. 77438—Appellate court reversed; circuit court affirmed.*

JUSTICE McMORROW, dissenting:

Today, the majority holds that the Illinois Supreme Court is powerless to implement a common law negligence cause of action for injuries sustained in alcohol-related car accidents that result when adults serve minors liquor in their homes and then permit the minors to leave in a vehicle while in a state of intoxication. Under the guise of deferring to the legislature's

"preemption" of the field, the majority turns its back on a development in the common law that is long overdue and has been recognized as such by the appellate court of this State and by courts of other jurisdictions. I dissent from the majority's interpretation of this court's precedent and I disagree with the majority's apparent belief that adults who allow or condone underage drinking and driving should enjoy judicially-created immunity from any civil liability for the injuries caused by teenage drunk driving.

The facts of the instant appeals illustrate the tragic consequences that result when social host adults allow teenagers to drink and drive. According to the plaintiffs' complaints, Lynn Sue Charles was 16 years old when she went to a party at the home of Alan Seigfried. She drove herself to the party in her car. The party started in the evening on February 15 and lasted into the early morning hours of February 16, 1991. Seigfried provided drinks for everyone there, including Lynn Sue. In fact, Lynn Sue had so much to drink that she became extremely intoxicated. Seigfried had personal contact with her during the party and knew the advanced state of drunkenness that she had reached. He also knew that she had driven her own car to the party. Nevertheless, Seigfried allowed Lynn Sue to leave the party, while she was extremely intoxicated, by driving her own car. She had a fatal collision while driving from the party. At the time of her death, Lynn Sue's blood-alcohol content was 0.299, which was three times the level of legal intoxication for an adult.

Paula Bzdek was 15 years old when she went to a party that was held at the Townsley home on September 15, 1990. The Townsleys gave her alcohol to drink while she was at the party. They also provided it to David Duff, who was 18 years old. Both Paula and David became intoxicated. They left the Townsley home in

David's car while they were inebriated. The Townsleys knew that the couple left their home in David's vehicle, which he was driving, and that both were intoxicated when they left. While David was driving the vehicle, he lost control of the car and crashed into oncoming traffic. Paula sustained injuries as a result of the accident.

Suit was filed against the adult social hosts on behalf of both Lynn Sue Charles and Paula Bzdek. The pleadings alleged that the adult defendants had been negligent when they permitted minors to drink alcohol at the parties, to become intoxicated, and had then allowed the teenagers to drive a car from the gathering. The trial court dismissed the pleadings for failure to state a claim for which relief could be granted, but the appellate court reversed these determinations. Relying upon *Cravens v. Inman* (1991), 223 Ill. App. 3d 1059, the appellate court held that Illinois common law recognizes a negligence action against a social host for injuries resulting from an alcohol-related vehicle accident when the host served alcohol to minors, allowed them to become intoxicated, and then permitted the minors to leave the gathering in an automobile.

The facts of *Cravens* are remarkably similar to the facts in the present appeals. In *Cravens*, adult social hosts held a party at which minors were allegedly allowed and permitted to drink alcohol to the point of intoxication. The social hosts then allowed the minors to leave the party in an automobile, although the hosts knew or should have known that they were inebriated. The driver of the vehicle lost control of the car, causing it to crash. One of the teenagers in the vehicle sustained injuries that resulted in her death.

The appellate court in *Cravens* squarely confronted the merits of the legal issues raised by the parties. The court held that the Dramshop Act did not preempt a common law negligence cause of action for social host li-

ability in the provision of alcohol to a minor who becomes intoxicated and sustains injuries in an alcohol-related car accident. The *Cravens* court reasoned that there was nothing in the express terms of the statute, nor its jurisprudential interpretations, that excluded social host liability for the provision of alcohol to a minor. (*Cravens*, 223 Ill. App. 3d at 1072-75.) The court also determined that principles of *stare decisis* could not legitimate a court's refusal to recognize a tort claim necessitated by modern-day realities. (*Cravens*, 223 Ill. App. 3d at 1075.) Reviewing the allegations of the plaintiff's complaint, the court found the pleadings sufficient to state a claim for common law negligence. *Cravens*, 223 Ill. App. 3d at 1076-80.

I reaffirm the views expressed in *Cravens*, and incorporate them herein by reference. There is no legal impediment to recognition of social host liability in cases where an adult social host permits a minor to drink to the point of intoxication, permits the minor to leave the gathering in a vehicle, and the minor or a third party sustains or causes injuries in an alcohol-related car accident. The citizens of this State deserve the full protection of our common law principles of tort liability, and this court has the power and the prerogative to extend to them such protections.

In today's decision, the majority reverses the rulings of the appellate court and overrules the holding in *Cravens*. In so doing, the majority perpetuates an injustice in our State to all victims of teen-aged drunk driving and to our taxpayers who pay much of the costs of injuries and deaths caused by alcohol-related accidents involving teen-aged drivers. This court can, and should, recognize a common law negligence cause of action for social host liability in the provision of alcohol to a minor under the limited circumstances established in *Cravens*. Social host liability is a valid claim under com-

mon law principles of ordinary negligence where an adult holds a social gathering which minors attend, the adult allows the minor to drink alcohol to the point of intoxication, the adult permits the inebriated minor to leave the gathering in an automobile although the adult knows of the minor's intoxicated condition, and the minor or a third party is then injured in an alcohol-related traffic accident.

I cannot join in my colleagues' refusal to recognize social host tort liability under the limited circumstances delineated in *Cravens.* In my view, the reasons advanced by the majority are hollow and stale. The majority's protestations of legislative preemption, *stare decisis,* and public policy cannot withstand the scrutiny of legal reasoning.

## I

The majority concludes that the plaintiffs' claims for negligence against the defendant social hosts are preempted by the Illinois Dramshop Act (235 ILCS 5/6—21 (West 1992)) and that any move to enlarge the Act, in order to include claims such as those of the plaintiffs, should be undertaken by the Illinois legislature.

The majority's recitations regarding legislative preemption are misguided. This court has often held that the Dramshop Act preempts the field with respect to liability for the commercial sale of alcohol to an *adult.* (*Hopkins v. Powers* (1986), 113 Ill. 2d 206; *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 76-77; *Cunningham v. Brown* (1961), 22 Ill. 2d 23; *Howlett v. Doglio* (1949), 402 Ill. 311.) But the Dramshop Act, in neither its express terms nor its underlying intent and purpose, makes any reference to and in no way precludes *social host liability* for the provision of alcohol to a *minor.* It is illogical to construe a statute so that it says something about a topic on which the statute is clearly *silent.*

The majority's analysis of its own precedent is equally ill-advised. The majority states that "[f]or over one century, this court has spoken with a single voice to the effect that no social host liability exists in Illinois." (165 Ill. 2d at 486.) This is an inaccurate statement of the common law of this State. What is correct as a statement of law is that this court has *never* addressed the issue of whether there should be social host liability for injuries caused by the provision of alcohol to a *minor.* Rather, this court's past decisions all address the question of whether there should be social host or dramshop liability for the provision of alcohol to an *adult.* See *Hopkins v. Powers* (1986), 113 Ill. 2d 206 (dramshop owner not subject to "liability in tort" for purpose of contribution among joint tortfeasors); *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435 (Wisconsin dramshop not subject to jurisdiction under Illinois long-arm statute); *Graham v. General U.S. Grant Post No. 2665* (1969), 43 Ill. 2d 1 (Dramshop Act has no extraterritorial effect outside Illinois; reaffirmed rule that Act preempts common law negligence liability for dramshop sale of alcohol to adult); *Cunningham v. Brown* (1961), 22 Ill. 2d 23 (Dramshop Act preempts common law liability for sale of alcohol to adult); *Cruse v. Aden* (1889), 127 Ill. 231 (Dramshop Act preempts common law liability for gift of alcohol to adult).

To rely upon this court's antiquated decision in *Cruse,* as the majority does (165 Ill. 2d at 488), is also inaccurate. The facts in *Cruse* involved a grown adult male who became intoxicated, was thrown from his horse, and died. The *underage* drinkers in the present appeals were not riding horses. They were driving in automobiles, which are infinitely more complex, complicated, and dangerous than a common farm animal. This critical distinction is lost on the majority.

It is also very important that the injured party in *Cruse* was an adult male, not a young child. This court in *Cruse* reasoned that "[i]t was not a tort, at common law, to either sell or give intoxicating liquor to 'a strong and able-bodied man' ***." (*Cruse*, 127 Ill. 2d at 234.) This reasoning has no relevance to instances where the person who consumed the alcohol was under the legal drinking age. The issue at bar does not involve the provision of alcohol to an adult. Rather, we are specifically concerned with a social host's provision of alcohol to minors who are permitted to become intoxicated and then drive a vehicle. As the court stated in *Ely v. Murphy* (1988), 207 Conn. 88, 540 A.2d 54:

> "The proposition that intoxication results from the voluntary conduct of the person who consumes intoxicating liquor assumes a knowing and intelligent exercise of choice, and for that reason is more applicable to adults than to minors. With respect to minors, various legislative enactments have placed them at a disability in the context of alcohol consumption. *** These *** statutes reflect a continuing and growing public awareness and concern that children as a class are simply incompetent by reason of their youth and inexperience to deal responsibly with the effects of alcohol. ***
>
> This growing public awareness *** causes us to conclude that common law precepts in this area also warrant reexamination." *Ely*, 207 Conn. at 93-94, 540 A.2d at 57.

Our appellate court has expressed growing dissatisfaction with jurisprudence of this State regarding civil liability for alcohol-related injuries. Appellate decisions have already created exceptions to the general rule of non-liability for the provision of alcohol in contexts other than dramshop actions. (See, *e.g.*, *Haben v. Anderson* (1992), 232 Ill. App. 3d 260; *Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231 (imposing common law negligence liability when minor "required" to consume alcohol during college "hazing" party).) The injustice of the majority's rul-

ing in the case at bar has been readily apparent to our appellate court:

"Our courts have observed that the extraordinary toll in personal injuries and property damage caused by alcohol-related accidents 'may well warrant' a reevaluation of current legal precedent in this State. (*Estate of Ritchie [v. Farrell* (1991)], 213 Ill. App. 3d [846], 850.) Our decisions have also acknowledged that there 'may well be validity to the position' that the Dramshop Act should not be considered an exclusive remedy when liquor is provided to a minor, and that perhaps the law should be altered so that all persons who furnish alcohol to minors are held financially accountable for injuries proximately caused by the minors' alcohol use. (*Puckett [v. Mr. Lucky's Ltd.* (1988)], 175 Ill. App. 3d [355], 357.) It has also been cogently observed that the furnishing of alcohol to a minor seriously endangers the health, safety, and welfare of all Illinois citizens. *Puckett*, 175 Ill. App. 3d at 361 (Knecht, J., dissenting)." *Cravens*, 223 Ill. App. 3d at 1069.

The concerns expressed by our appellate court are valid and compelling and deserve this court's full attention and consideration. Unfortunately, the majority refuses to exercise this court's authority to review our concepts of common law negligence liability with a view to whether they are just and fair, when considered in light of the present-day reality of the needless carnage and destruction wrought by underage drunk driving.

## II

In an effort to bolster its position, the majority also invokes principles of *stare decisis*. The majority recites that this court must "stand by precedent and leave settled points of law undisturbed." (165 Ill. 2d at 492.) According to the majority, "[d]ecisions that have been established for a long period of years should, in the orderly administration of justice, be deemed controlling unless and until the General Assembly provides otherwise. [Citation.]" (165 Ill. 2d at 492.) The majority believes that "it is apparent that the legislature has acquiesced in the court's construction of the statute,

which has by now become part of the fabric of the Dramshop Act. [Citations.]" 165 Ill. 2d at 492.

However, this court's view of *stare decisis* has never been used, as the majority does in the present cause, as an excuse for judicial inaction that amounts to an abandonment of this court's duty to guide and develop the common law of this State.

"Our common law, which is of judicial origin, is comprised of broad, flexible principles that find their source in fundamental values of justice, logic, and common sense, and is adapted by the judiciary according to the changing demands of our society. [Citation.] As [this court] noted in *Dini v. Naiditch* (1960), 20 Ill. 2d 406 ***, wherein [we] recognized the common law right of a woman to sue for loss of spousal consortium:

'We find no wisdom in abdicating to the legislature our essential function of re-evaluating common-law concepts in the light of present day realities. Nor do we find judicial sagacity in continually looking backward and parroting the words and analysis of other courts so as to embalm for posterity the legal concepts of the past.' 20 Ill. 2d at 429." *Cravens*, 223 Ill. App. 3d at 1074.

As these principles demonstrate, the rule of *stare decisis* is not "so static that it deprives the court of all power to develop the law. (*Alvis* [*v. Ribar* (1981)], 85 Ill. 2d [1,] 24.) *** [T]he maintenance of stability in our legal concepts does not and should not occupy a preeminent position over the judiciary's obligation to reconsider legal rules that have become inequitable in light of the changing needs of our society. *Alvis*, 85 Ill. 2d at 24." *Cravens*, 223 Ill. App. 3d at 1075.

Moreover, the doctrine of *stare decisis* provides no refuge for the majority in the present cause because, as noted more fully above, this court has never addressed whether there should be *social host* liability for the provision of alcohol to a *minor*. The legislature's failure to

adopt proposed statutory provisions that would have been consistent with *Cravens* does not establish that the General Assembly has repudiated the principles enunciated in *Cravens*. Rather, the General Assembly's actions reveal that the legislature has chosen to "conform[ ] the statutes to the then-existing laws as announced by the court." (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 23.) This court's reasoning in *Alvis*, where we adopted the doctrine of comparative negligence notwithstanding the General Assembly's failure to enact equivalent legislation, is particularly applicable:

> "We believe that the proper relationship between the legislature and the court is one of cooperation and assistance in examining and changing the common law to conform with the ever-changing demands of the community. There are, however, times when there exists a mutual state of inaction in which the court awaits action by the legislature and the legislature awaits guidance from the court. Such a stalemate is a manifest injustice to the public. When such a stalemate exists and the legislature has, for whatever reason, failed to act to remedy a gap in the common law that results in injustice, it is the imperative duty of the court to repair that injustice and reform the law to be responsive to the demands of society." *Alvis*, 85 Ill. 2d at 23-24.

This court's analysis in *Alvis* is equally persuasive in the present appeals. Although the General Assembly has not enacted legislation to formally adopt *Cravens*, the legislature has also never enacted legislation to overturn the appellate court's *Cravens* decision. As a result, it is incumbent upon this court to exercise its power and prerogative to develop the common law of this State and to decide that our common law encompasses a claim for social host negligence liability for injuries resulting from teen-age, alcohol-related vehicle accidents. This court can and must "repair th[e] [present] injustice and reform the law to be responsive to the demands of society."

Furthermore, it cannot be cogently argued by the majority that this court has never expanded upon the explicit terms of the Dramshop Act. To the contrary, this court has created, by judicial fiat, a significant exclusion to the applicability of the specific provisions of the Dramshop Act. That exclusion is commonly known as the "complicity doctrine" and bars recovery by a plaintiff who actively procured or contributed to the intoxication of the person now sued for wrongful conduct. The complicity doctrine was woven from whole cloth by this court and has never been expressly adopted by the legislature. Yet it stands, and remains, as a valid exception to the Act. See *Walter v. Carriage House Hotels, Ltd.* (1995), 164 Ill. 2d 80.

Since this court possessed and exercised the power to create the complicity doctrine as an exception to the Dramshop Act, then this court certainly has the power to create an additional exception for social host liability in the provision of alcohol to a minor under the limited circumstances recognized in *Cravens.* The majority's refusal to do so, under the guise of *stare decisis,* is therefore all the more untenable.

III

I also disagree with the majority's view that social drinking is such a sensitive public policy issue in this State that we should defer to the legislature to decide whether there should be social host liability in the provision of alcohol to a minor under the limited circumstances recognized in *Cravens.*

The majority complains that it is ill-suited to weigh the various competing factors that are implicated in determining whether social hosts should avoid civil liability when they facilitate drunk driving by minors. The concerns of the majority are exaggerated. This court has faced other difficult and pressing issues that implicated broad social policy, such as the legality of

withdrawing life-saving artificial nutrition and hydration (*In re Greenspan* (1990), 137 Ill. 2d 1; *In re Longeway* (1989), 133 Ill. 2d 33), adoption of principles of comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1), and adoption of rules that allow contribution among joint tortfeasors (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1). In each of these instances, this court confronted the questions raised both forthrightly and directly. Certainly the issues considered in *Greenspan*, *Longeway*, *Alvis*, and *Skinner* were just as difficult and complicated as those that we are called upon to consider now.

In the past, we have not been persuaded by the argument that this court should refrain from taking action because the General Assembly had considered, but rejected, legislation that would have achieved what was accomplished by judicial decision in our rulings. Instead, this court acknowledged and acted upon its mandated responsibility to develop and guide the common law of this State, including common law principles regarding tort liability for damages caused by negligent behavior. (See, *e.g, Longeway*, 133 Ill. 2d at 52-55; *Alvis*, 85 Ill. 2d at 21-24; see also *Skinner*, 70 Ill. 2d at 13-14.) These visionary and ground-breaking decisions would never have been adopted if the court had adhered to the present majority's inaccurate perception of *stare decisis*.

The majority's treatment of jurisprudence from other States is equally distorted. Notwithstanding the majority's protestations to the contrary, there is a clear national trend favoring social host liability for the provision of alcohol to minors subsequently injured in alcohol-related vehicle accidents. (See Appendix to Dissent.) In fact, since *Cravens* was decided, three more States, Arizona, North Carolina and Washington, have adopted social host liability for the provision of alcohol to a minor. (See also *Born v. Mayers* (N.D. 1994), 514

N.W.2d 687 (dramshop statute creates private cause of action against social host who provided alcohol to an obviously intoxicated adult).) Thus, as of the date of this writing, 26 states have adopted social host liability for injuries caused by adult social hosts who knowingly permitted teen-age drunk driving.

Although the majority makes particular reference to some of the decisions from other States (165 Ill. 2d at 495-97), its references are highly selective and, at times, somewhat misleading. Contrary to the majority's understanding of the pertinent case law, both Louisiana and Delaware have adopted social host liability. Also, the Alabama Supreme Court adopted social host liability as a judicially created negligence action based upon the provisions of relevant statutory provisions prohibiting the sale or giving of liquor to a minor. In so ruling, the court noted that the "trend in recent decisions of other jurisdictions is to allow causes of action where adults have assisted in furnishing alcoholic beverages to minors" and included a lengthy appendix detailing these decisions. (*Martin v. Watts* (Ala. 1987), 508 So. 2d 1136, 1141.) The handful of States that have limited recovery to third parties, or have imposed a cap on the amount of recovery, have nonetheless adopted social host liability. The Nevada decision cited by the majority is not pertinent to our present inquiry, since the case involved the question of whether the court should adopt common law liability for the *commercial sale* of alcohol, and the " 'new trend' argument" that it rejected did not pertain to social host liability for the noncommercial furnishing of alcohol. (*Hinegardner v. Marcor Resorts* (1992), 108 Nev. 1091, 1094-95, 844 P.2d 800, 803; see also *Pelzek v. American Legion* (1990), 236 Neb. 608, 463 N.W.2d 321 (commercial sale of alcohol).) The majority neglects to acknowledge the single thread running through many of the decisions from other States that have recognized

social host liability: the overwhelmingly significant social policy of deterring adults from providing alcohol to minors in social settings and then permitting the teenagers to drive a vehicle while intoxicated.

I am unpersuaded by the majority's professed apprehension for the potentially "unlimited" liability of social hosts in comparison to dramshop owners. The majority's concern fails to appreciate the distinctions between common law negligence liability and liability under the Dramshop Act.

> "[T]he limited dollar recovery provided in the Act reflects the unique liability created under the Act: a dramshop owner is liable without fault. [Citation.] The defendants' common law negligence liability, on the other hand, requires proof that the defendant breached a duty to exercise the appropriate standard of care under the circumstances, *i.e.*, proof of fault. [Citation.] In addition, the defendants' common law negligence liability would not be 'unlimited,' but would be offset by the percentage attributable to the plaintiff's comparative fault, if any, and the contribution, if any, of other tortfeasors. [Citation.]" *Cravens*, 223 Ill. App. 3d at 1079-80.

Little sympathy can be extended to adults who, as alleged in the present cases, engaged in criminal conduct by openly fostering and furthering the alcoholic intoxication of teenagers, and who then permitted those young persons to get into automobiles knowing full well that they were inebriated. I believe this court should be more concerned about the injuries and fatalities caused by needless teenage drunk driving, and should be less preoccupied with the exposure to liability of the social host adults who promoted that drunk driving. The majority's reference to social host's need for a "license" to serve alcohol is not well founded, since providing alcohol to a minor is a criminal offense in this State for which no one, whether social host or dramshop, would ever be issued a "license."

It is beyond dispute that the General Assembly's actions thus far to curb underage drunk driving have been considerable and commendable. However, I cannot agree with the majority's implicit view that *Cravens* represented judicial interference in the legislature's duties or powers. Development of the common law is an inherently judicial function. As justices of this State's supreme court, we are elected to facilitate the evolution of our common law in order to accommodate the changing needs of our citizens. Consequently, recognition of negligence liability, which is and has always been the common, judge-made law of this State, does not interfere with the legislature's role.

Recognition of social host liability for the provision of alcohol to minors who become intoxicated and are then injured in alcohol-related vehicle accidents is not inconsistent with the spirit or policy for the General Assembly's adoption of the Dramshop Act.

> "When first enacted, the Illinois dram shop laws were an innovative and progressive approach to dealing with problems arising from the consumption of alcohol. The laws provided for strict liability and called for a liberal construction to ensure the protection of the 'health and welfare of the people of Illinois.' The dram shop laws initially, in harmony with their purpose, gave a sword to innocent victims by allowing them to overcome the common law prohibition against dram shop actions." (Comment, *Illinois Dram Shop Reform*, 28 John Marshall L. Rev. 215, 215-16 (1994).)

Recognizing social host liability under the limited circumstances set forth in *Cravens* is completely consistent with the purposes of dramshop liability. By imposing liability on adults who promote teenage drunk driving, this court would fashion a progressive rule to aid the legislature in its "war on drunk driving" by teenagers.

The General Assembly's recent legislation (see 165 Ill. 2d at 497) to further curb drunk driving is also wholly consistent with *Cravens*. Surely the legislature's

enactments were not meant to imply that this court should sit idly by and pass off to the legislature any and all decisions regarding the recognition of social host civil liability for provision of alcohol to a minor. There is nothing contradictory in the "war on drunk driving" and the ruling in *Cravens*. In fact, Mothers Against Drunk Driving (MADD) filed an *amicus curiae* brief in *Cravens* and asked the appellate court to recognize social host liability. Its arguments included the following:

"This lawsuit is the very first in which MADD *** has sought to lend its voice and the voice of its members. While focussing its efforts on the types of programs and outreach efforts which exemplify the national organization, MADD has awaited the response of Illinois' courts and legislature to the prayers for a remedy directed against those who facilitate illegal under-age drinking. The interest of MADD in this lawsuit is simply to impress upon the Court the need for our judiciary to endorse liability against irresponsible social hosts and enable justice to be done for the innocent victims of callous and careless private citizens. MADD is strongly committed to the position that sound public policy and legal principles support such a remedy."

After reviewing reports regarding the consumption of alcohol by minors, and the increased likelihood that minors will suffer alcohol-related vehicle accidents, MADD argued:

"These statistical realities squarely support the causal link between teenage drinking, motor vehicle collisions and injuries. With scores of teenagers and innocent victims being killed in alcohol-related collisions, society requires an avenue of recourse against those contributing to the illegal consumption of liquor. The imposition of liability on those who unlawfully serve liquor to and encourage consumption by teenagers is overwhelmingly justified."

Information cited by MADD established the extent to which adolescents are unable to appreciate the consequences of drinking. This showed that adolescents do

not appreciate the effects of alcohol and do not recognize the likelihood that their driving abilities would be impaired if they were to attempt to drive after having become intoxicated.

Statistics recently published by the Illinois Secretary of State in conjunction with his "War on Drunk Driving" similarly paint a grim picture of underage drinking in this State. The Secretary of State relates that, according to the National Commission Against Drunk Driving, car accidents are the leading cause of death for minors age 16 to 20 (40,000 Lives: A Decade of Progress 4), and minors are much more likely to be involved in car crashes in their first few years of driving (40,000 Lives: A Decade of Progress 5). More than a third of teen-age drivers who were killed in car accidents in 1992 had a blood alcohol level of at least .10 percent. 40,000 Lives: A Decade of Progress 5.

It is a sad commentary that the citizens of this State must suffer the staggering consequences of the majority's refusal to take a firm stand against social hosts who allow minors to get drunk and then drive a car. Under the majority's holding, adults are free to serve alcohol to minors until the youths are intoxicated, and nevertheless permit the minors to then drive a vehicle in spite of their inebriation. In so ruling, the majority holds that such adults are wholly shielded and immune from any civil penalty for their actions. In my view, this result is an injustice and an outrage. It completely forsakes victims of teenage drunk driving and affords them no civil remedy whatsoever under the law from the adult social host who provided the alcohol and fostered the minor's intoxication. In addition, the majority's decision imposes on taxpayers the unwarranted and tremendous tax burden of covering much of the costs associated with injuries and deaths caused by teenage drunk driving. (See Secretary of State, 1993

DUI Fact Book, at II (stating that according to national estimates, alcohol-related crashes cost taxpayers millions of dollars in tax monies).) The clear and manifest injustice perpetuated by the majority's disposition is entirely unnecessary, since there is no sound legal justification for the majority's refusal to apply time-honored principles of common law negligence in the cases presently before us.

In view of the majority's decision, legislative action becomes all the more critical. Until more is done, adults who host parties where minors are allowed to become inebriated and then drive a vehicle will have less incentive to change their ways and "just say no" to teenage drunk driving. Adult social hosts must realize that there are legal ramifications, both civil and criminal, to allowing teenage drunk driving. Unless that lesson is taught and learned, we all will suffer the ugly and tragic consequences, whether physical, emotional, social, and economic, that are inflicted when minors are permitted to drink and drive.

For these reasons, I respectfully dissent.

JUSTICE HARRISON joins in this dissent.

### APPENDIX TO DISSENT

Alabama
> *Martin v. Watts* (Ala. 1987), 508 So. 2d 1136

Arizona
> *Estate of Hernandez v. Arizona Board of Regents* (Ariz. 1994), 866 P.2d 1330

Colorado
> Colo. Rev. Stat. § 12—47—128.5 (1994)

Connecticut
> *Ely v. Murphy* (1988), 207 Conn. 88, 540 A.2d 54

Delaware
> *DiOssi v. Maroney* (Del. 1988), 548 A.2d 1361

Georgia
> *Sutter v. Hutchings* (1985), 254 Ga. 194, 327 S.E.2d 716; Ga. Code Ann. § 51—1—40 (1994)

## Idaho

*Slade v. Smith's Management Corp.* (1991), 119 Idaho 482, 808 P.2d 401; *Alegria v. Payonk* (1980), 101 Idaho 617, 619 P.2d 135; Idaho Code § 23—808 (Supp. 1994)

## Indiana

*Brattain v. Herron* (1974), 159 Ind. App. 663, 309 N.E.2d 150

## Iowa

*Bauer v. Dann* (Iowa 1988), 428 N.W.2d 658

## Louisiana

*Gresham v. Davenport* (La. 1989), 537 So. 2d 1144

## Maine

Me. Rev. Stat. Ann. tit. 28-A, § 2501 *et seq.* (West 1994)

## Massachusetts

*McGuiggan v. New England Telephone & Telegraph Co.* (1986), 398 Mass. 152, 496 N.E.2d 141

## Michigan

*Longstreth v. Gensel* (1985), 423 Mich. 675, 377 N.W.2d 804

## Minnesota

Minn. Stat. § 340A.801 (1994), abrogating *Holmquist v. Miller* (Minn. 1985), 367 N.W.2d 468

## Montana

*Nehring v. LaCounte* (1986), 219 Mont. 462, 712 P.2d 1329; Mont. Code Ann. §§ 16—6—305, 27—1—710 (1994)

## New Jersey

*Batten v. Bobo* (1986), 218 N.J. Super. 589, 528 A.2d 572

## New Mexico

*Walker v. Key* (App. 1984), 101 N.M. 631, 686 P.2d 973; N.M. Stat. Ann. § 41—11—1 (Michie 1994)

## New York

*Montgomery v. Orr* (1986), 130 Misc. 2d 807, 498 N.Y.S.2d 968; N.Y. General Obligations Law § 11—100 *et seq.* (McKinney 1989)

## North Carolina

*Hart v. Ivey* (1992), 332 N.C. 299, 420 S.E.2d 174

## Ohio

*Mitseff v. Wheeler* (1988), 38 Ohio St. 3d 112, 526 N.E.2d 798

Oregon
*Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity* (1971), 258 Or. 632, 485 P.2d 18; Or. Rev. Stat. § 30.950 (1994)

Pennsylvania
*Congini v. Portersville Valve Co.* (1983), 504 Pa. 157, 470 A.2d 515

Utah
Utah Code Ann. § 32A—14—101 (1994)

Vermont
*Langle v. Kurkel* (1986), 146 Vt. 513, 510 A.2d 1301; Vt. Stat. Ann. tit. 7, § 501 (1994)

Washington
*Hansen v. Friend* (1992), 118 Wash. 2d 476, 824 P.2d 483

Wisconsin
*Koback v. Crook* (1985), 123 Wis. 2d 259, 366 N.W.2d 857