Thomas GRITZNER and Sandra Gritzner, parents and guardians of Tara G., a minor, Plaintiffs-Appellants,†

v.

MICHAEL R., a minor, and Karen Rosetti, as parent of Michael R., Defendants,

Roger BUBNER, as custodian of Michael R., and American Family Mutual Insurance Company, Defendants-Respondents.†

Court of Appeals

*No. 98–0325. Oral argument April 13, 1999.—Decided June 9, 1999.*

(Also reported in 598 N.W.2d 282.)

†Two petitions to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the brief and oral argument of *Steven J. Watson* of *Steven J. Watson Law Office* of Elkhorn.

On behalf of the defendant-respondent, Roger Bubner, the cause was submitted on the brief and oral argument of *Phillip C. Theesfeld* of *Baxter & O'Meara* of Milwaukee. On behalf of the defendant-respondent, American Family Mutual Insurance Company, there was oral argument by *Thomas M. Devine* of *Hostak, Henzl & Bichler, S.C.* of Racine.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   Thomas G. and Sandra G., parents of Tara G., appeal from a circuit court order dismissing their claims against Roger Bubner. Tara was four years old when she was sexually molested by Michael R., the ten-year-old son of Bubner's girlfriend, while playing at Bubner's home. The parents' complaint alleged that Bubner negligently failed to warn them of Michael's propensity for inappropriate sexual behavior based on his past similar conduct. The complaint also alleged that Bubner negligently failed to supervise Michael and Tara during the alleged episode of sexual molestation.

The circuit court granted Bubner's motion to dismiss the parents' complaint. We conclude that the court properly dismissed the failure to warn claim on public policy grounds pursuant to *Kelli T-G. v. Charland*, 198 Wis. 2d 123, 542 N.W.2d 175 (Ct. App. 1995). However, we further conclude that the complaint states a valid claim against Bubner for failure to supervise. We reverse this portion of the dismissal order and remand for further proceedings on this claim.

## BACKGROUND

When reviewing a circuit court's decision on a motion to dismiss, we accept as true all the facts pleaded. *See L.L.N. v. Clauder*, 209 Wis. 2d 674, 683, 563 N.W.2d 434, 438–39 (1997). The parents' complaint sets out ninety-four allegations which, as material to the issues on this appeal, state the following.

Bubner is the boyfriend of Karen R. Michael is Karen's ten-year-old son. Karen and Michael lived with Bubner in a home owned by Bubner's mother. Prior to May 1, 1996, Michael had engaged in inappropriate sexual acts with other children, including his half-sister. Bubner was aware of these contacts. He was also aware that Tara lived next door and he knew her parents.

Between May 1, 1996, and July 7, 1996, Bubner allowed Tara to come to his home to play with Michael. Bubner had custody and control over Michael during these times and he knew that Tara was in Michael's unsupervised presence. He also knew there was a risk that Tara would be a victim of Michael's inappropriate sexual acts if left unsupervised with Michael.

On July 7, 1996, Karen and Bubner informed Tara's parents that Michael had sexually abused Tara while the two children were unsupervised at Bubner's home. On August 21, 1996, the Protective Services Investigator of the Child Abuse and Neglect Unit of the Walworth County Department of Human Services substantiated that Tara had been a victim of sexual abuse by Michael.

The parents filed a complaint against Bubner on July 17, 1997, alleging that Bubner was negligent for failing to supervise Michael and Tara during Tara's visits, failing to control Michael during Tara's visits

and failing to warn them of Michael's prior sexual conduct.[1] Bubner responded with a motion to dismiss arguing that he did not have a duty to supervise or control either child and that he had no duty to warn Tara's parents of Michael's propensity for inappropriate sexual behavior. He additionally argued that *Kelli T-G.* precluded Tara's parents' claims as a matter of public policy.

The trial court held a hearing on Bubner's motion to dismiss on December 5, 1997. Following the hearing, the court entered an order granting the motion to dismiss. The court stated, in relevant part, that "a live-in boyfriend does not have a duty to supervise or control his live-in girlfriend's minor children" and that the parents had "failed to establish any legal duty on the part of one person to warn about another person's alleged propensities." In granting Bubner's request, the court additionally relied on the rationale and public policy considerations discussed by this court in *Kelli T-G.* The parents appeal.

## DISCUSSION

### *Test for Sufficiency of Complaint and the Standard of Review*

When examining the sufficiency of a complaint, we accept as true all facts pleaded by the plaintiff. *See L.L.N.,* 209 Wis. 2d at 683, 563 N.W.2d at 438–39. In addition, we accept all inferences that can reasonably be derived from those facts. *See id.* A motion to dismiss tests whether the complaint is legally sufficient to state

---

[1] The complaint additionally alleged negligent infliction of emotional distress. The circuit court dismissed that claim and Tara's parents do not pursue it on appeal.

a claim upon which relief may be granted. *See Evans v. Cameron*, 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985). This inquiry presents a question of law which we review without deference to the trial court's decision. *See Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993). Nonetheless, we value a trial court's decision on a question of law. *See id.*

### Bubner's Duty Generally

Generally, an occupier of a premises owes a duty to exercise ordinary care towards those who come upon the property. In *Shannon v. Shannon*, 150 Wis. 2d 434, 443–44, 442 N.W.2d 25, 30 (1989), our supreme court stated:

> The duty toward all persons who come upon property with the consent of the occupier will be that of ordinary care. By such standard of ordinary care, we mean the standard that is used in other negligence cases in Wisconsin. . . . Under that test, as we have repeatedly stated, negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others. A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject him or his property, or the person or property of another, to an unreasonable risk of injury or damage. [Quoted source omitted.]

The parties do not dispute this principle of negligence law.

Under this law, the parents contend that Bubner, as the occupier of the premises, should have reasonably foreseen that Michael might harm Tara. In light of that knowledge, the parents argue that Bubner had a duty to warn them of the risk which Michael posed or, failing that, a duty to supervise the children during Tara's visits. Bubner contends that he had no duty under either claim for the public policy reasons expressed under *Kelli T-G.* He further contends that he had no such duty because he did not have a special relationship with any of the persons involved in this case.

### *Failure to Warn*

We conclude that *Kelli T-G.* requires that we affirm the trial court's dismissal of the parents' claim that Bubner owed them a duty to warn of Michael's propensity for inappropriate sexual behavior towards other children.

In *Kelli T-G.*, the complaint alleged that Gerald Charland had sexually abused Kelli. The complaint named Patricia Neubauer, Charland's former wife, as the defendant. After Neubauer and Charland had separated, but before the alleged assault against Kelli, Neubauer learned of Charland's pedophilia. Neubauer did not reside with Charland at the time of the alleged assault against Kelli, and she was not on the premises when the abuse occurred. The complaint alleged that Neubauer knew that Kelli sometimes played with her daughter at Charland's home and that Neubauer had failed to warn Kelli's mother that Charland was a pedophile who posed a danger to Kelli. *See Kelli T-G.*, 198 Wis. 2d at 125–26, 542 N.W.2d at 176.

In *Kelli T-G.*, the parties debated whether Neubauer had a special relationship with Kelli and her mother such that Neubauer had a duty to warn. How-

549

ever, the court of appeals did not find it necessary to address that issue because the court determined that recovery based on a failure to warn was barred as a matter of public policy. *See id.* at 129–30, 542 N.W.2d at 177 (Recovery may be rejected on public policy grounds even where the chain of causation is complete and direct.). The *Kelli T-G.* court concluded that to allow recovery based on failure to warn would be to "enter a field that has no sensible or just stopping point." *Id.* at 130, 542 N.W.2d at 178 (quoted source omitted). We set out the court's concerns in the accompanying footnote.[2]

[2] The court raised the following questions regarding the limitations of recovery in *Kelli T-G. v. Charland,* 198 Wis. 2d 123, 130–31, 542 N.W.2d 175, 178 (Ct. App. 1995):

Slight variations on the facts of this case illustrate the virtual impossibility of defining a sensible starting or stopping point. Would Neubauer's duty to warn depend on whether she knew of Charland's progress in counseling or compliance with probation? Would her duty depend on her assessment of whether the criminal justice system had adequately addressed the dangers Charland posed? Would Neubauer's duty have varied if she had been a mental health or criminal justice professional? If so, would her duty have further varied according to her opinion about the appropriateness and adequacy of the probation and conditions ordered by the criminal court? If Charland had been charged but never convicted of child sexual abuse, and if Neubauer believed, nonetheless, that Charland was a pedophile, would she still have had a duty to warn? And if Neubauer had been wrong in her forecast of Charland's potential danger, would she have been liable to Charland for warning Carolyn T.?

Moreover, who would Neubauer have a duty to warn? Neubauer answers that she would have a duty to warn only those "where foreseeability of harm is clear . . . and where the foreseeable victim is known." Would that extend to the next door neighbor? Would that include every one of Kelli's close friends or classmates? To protect herself from potential liability, would Neubauer need to remain as ignorant as possible of Charland's activities and associations so that she would not come to know of his "foreseeable

We are not enthusiastic about the holding in *Kelli T-G.*, and we believe that the holding in that case could have been confined to its facts thereby avoiding the public policy concerns. In fact, we will apply such an approach later in this opinion when we address Bubner's public policy challenge to the parents' failure to supervise claim. Nevertheless we are obligated to follow existing precedent of this court. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246, 256 (1997). We affirm that portion of the order dismissing the parents' failure to warn claim.

### *Failure to Supervise*

The parents next contend that their complaint states a claim for relief based upon Bubner's negligent failure to supervise Michael and Tara. They argue that Bubner assumed a duty to supervise both children and to control Michael.

### 1. RESTATEMENT (SECOND) OF TORTS and Related Wisconsin Law

The parents rely, in part, on certain provisions of ch. 12, Topic 7 of the RESTATEMENT (SECOND) OF TORTS (1965) (hereinafter RESTATEMENT), titled "DUTIES OF AFFIRMATIVE ACTION."

A. Sections 314A and 315(a) & (b) of the RESTATEMENT

Section 314 of the RESTATEMENT titled "Duty to Act for Protection of Others," states a general rule that a person owes no duty to act for the protection of others:

---

victims?" If so, ironically, any *moral* duty to warn that Neubauer otherwise might have felt would be undermined by potential liability for the *legal* duty she no longer could avoid.

The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.

However, the Comment to this section provides:

[This] general rule . . . should be read together with other sections which follow. Special relations may exist between the actor and the other, as stated in § 314 A, which impose upon the actor the duty to take affirmative precautions for the aid or protection of the other. The actor may have control of a third person . . . and be under a duty to exercise such control, as stated in §§ 316–320. . . . The actor may have committed himself to the performance of an undertaking, gratuitously or under contract, and so may have assumed a duty of reasonable care for the protection of the other, or even of a third person, as stated in §§ 323, 324 and 324 A.

Section 314A of the RESTATEMENT, entitled "Special Relations Giving Rise to Duty to Aid or Protect," recites an exception to the general "no duty" rule:

One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his [or her] normal opportunities for protection is under a similar duty to the other.

*Id.* at (4). The parents contend that Bubner voluntarily took custody of Tara by permitting her to play at his home and, as such, owed her a duty of protection.

The parents also contend that their claim is supported by RESTATEMENT § 315(a) & (b) which recite further exceptions to the general "no duty" rule:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a)   a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b)   a special relation exists between the actor and the other which gives to the other a right to protection.

The parents argue that pursuant to subsec. (a) Bubner had a special relationship with Michael such that he had a duty to control Michael's conduct and that pursuant to subsec. (b) Bubner had a special relationship with Tara which conferred a right to protection.

These sections of the RESTATEMENT both require a "special relationship" before imposing the duty. Bubner denies that he had any special relationship with Michael or Tara such that a duty to supervise or control either child existed.

Bubner argues that the "special relationship" under these sections of the RESTATEMENT requires a legal relationship. But the RESTATEMENT does not speak of a legal relationship; rather it speaks of "special relationship." Moreover, Bubner cites to no authority in the law of negligence which supports his argument. None of the numerous "special relationship" cases addressing these sections of the RESTATEMENT equate a "special relationship" with a "legal relationship." *See* RESTATEMENT §§ 314A, 315 apps. And, our supreme court's opinion in *Rockweit v. Senecal*, 197 Wis. 2d 409, 541 N.W.2d 742 (1995), suggests that a legal relationship is not required. There, the court held that public policy precluded liability against a member of a camping group who had failed to douse a campfire resulting in injury to a minor child who was also a member of the

553

group. In the course of that discussion, the court cited to § 314A of the RESTATEMENT and observed that there was no evidence that the defendant, who was unrelated to the child, had ever exercised custody or control over the child. *See Rockweit*, 197 Wis. 2d at 427, 541 N.W.2d at 750. This language suggests that if the defendant, who had no legal relationship with the child, had exercised custody or control, a duty under § 314A would exist.

██ Under the clear language of the RESTATEMENT, we hold that a legal relationship is not necessary to constitute a special relationship. Thus, the failure of the parents' complaint to state a legal relationship between Bubner and either of the children is not fatal to the parents' failure to supervise claim.

That brings us to the question of whether the complaint states a "special relationship." The complaint alleged that Michael was under Bubner's supervision and control during Tara's visits. The complaint additionally alleged that the parents had entrusted Tara to Bubner's care during the relevant time period. We think it self-evident that an adult who voluntarily takes on the supervision, custody or control, even on a temporary basis, of a visiting child such as Tara, stands in a special relationship to such child for purposes of the child's "protection" under § 314A of the RESTATEMENT. We also think it self-evident that an adult who takes on the supervision or custody of a child such as Michael, with prior knowledge of the risk posed by such child, stands in a special relationship both to such child for purposes of a duty to control the child's conduct pursuant to § 315(a) of the RESTATEMENT and to others such as Tara for purposes of the protection afforded by § 315(b) of the RESTATEMENT.

We hold that the complaint sufficiently alleged a special relationship for purposes of the parents' claim of negligent supervision by Bubner.

Our conclusion also disposes of Bubner's reliance on *Zelco v. Integrity Mutual Insurance Co.*, 190 Wis. 2d 74, 78–79, 527 N.W.2d 357, 358–59 (Ct. App. 1994). There, we held that a social host's duty of ordinary care did not extend to protecting a guest from the harmful conduct of another guest. *See id.* We reached that conclusion, in part, because the host did not have a special relationship with either guest. *See id.* But this case represents more than a mere guest/host situation. As we have just explained, Bubner stood in an adult/child relationship in which the control and supervision of both children had been entrusted solely to him. That markedly sets off this case from *Zelco.*[3]

██

We hold that the parents' complaint sufficiently states a cause of action in negligence based upon Bubner's alleged failure to supervise the children and Bubner's additional alleged failure to control Michael.

---

[3] Bubner also relies on *Zelco v. Integrity Mutual Insurance Co.*, 190 Wis. 2d 74, 527 N.W.2d 357 (Ct. App. 1994), for his argument that the harm to Tara was not foreseeable. However, the facts of *Zelco* are readily distinguished. The host in *Zelco* had not invited either Clifford Zelco, the injured guest, or Dean Hitsman, who injured Zelco, into her home. *See id.* at 77, 527 N.W.2d at 358. There was no evidence that it was foreseeable to the host that Zelco would be injured or that Zelco would confront Hitsman. *See id.* at 79, 527 N.W.2d at 359. In this case, Bubner consented to having Michael and Tara in his home and he had prior knowledge of Michael's propensity for inappropriate sexual behavior against other children. We reject this argument.

## B. Section 324A of the RESTATEMENT

Section 324A of the RESTATEMENT provides:

> One who undertakes, gratuitously or for considera-
> tion, to render services to another which he [or she]
> should recognize as necessary for the protection of a
> third person or his [or her] things, is subject to lia-
> bility to the third person for physical harm
> resulting from his [or her] failure to exercise reason-
> able care to protect[4] his [or her] undertaking, if
>> (a) his [or her] failure to exercise reasonable
>> care increases the risk of such harm, or
>> (b) he [or she] has undertaken to perform a
>> duty owed by the other to the third person, or
>> (c) the harm is suffered because of reliance of
>> the other or the third person upon the undertaking.

This provision of the RESTATEMENT was adopted by our
supreme court in *American Mutual Liability Insurance
Co. v. St. Paul Fire & Marine Insurance Co.*, 48 Wis. 2d
305, 313, 179 N.W.2d 864, 868 (1970). "[L]iability may
be imposed on one who, having no duty to act, gratui-
tously undertakes to act and does so negligently." *Id.*

We first note that a "special relationship" is not a
prerequisite for the duty created by this provision of
the RESTATEMENT. Rather, the linchpin of the duty
under this provision is the actor's gratuitous undertak-
ing of a service to another which the actor should
recognize as necessary for the protection of a third per-
son. Here, the allegations of the complaint, together
with the fair and reasonable inferences drawn there-
from, reveal that Bubner gratuitously undertook the
supervision of both children and the control of Michael

---

[4] The word "protect" in § 324A is a typographical error. It
should read "perform." *See Miller v. Bristol-Myers Co.*, 168 Wis.
2d 863, 883 n.7, 485 N.W.2d 31, 38 (1992).

on behalf of the parents of each child. Given his prior knowledge of Michael's propensity to sexually abuse other children, Bubner accordingly had a duty under this section of the RESTATEMENT to perform his undertaking with reasonable care. At a minimum, his alleged failure to properly supervise the children and to control Michael in light of his knowledge of Michael's propensities, increased the risk of harm to Tara pursuant to § 324A of the RESTATEMENT.

We hold that the parents' complaint states an additional basis for the negligence claim against Bubner under this provision of the RESTATEMENT.[5]

### 2. *Kelli T-G. and Public Policy*

Finally, Bubner argues that the public policy pronouncement in *Kelli T-G.* regarding the duty to warn also dooms the parents' duty to supervise claim. We disagree for two reasons.

First, the claim in *Kelli T-G.* was grounded on a failure to warn; here, the claim is grounded on a failure to supervise. We acknowledge that the two claims are interrelated and are often pled together either as subsets of a general negligence claim or as companion negligence claims. *See, e.g., Nieuwendorp v. American*

---

[5] At oral argument, Tara's parents additionally relied on RESTATEMENT §§ 318 and 319. Section 318 addresses the duty of a possessor of land or chattels to control the conduct of a licensee. However, the facts of this case do not concern a licensee. Section 319 sets forth the duty of those in charge of a person having dangerous propensities. However, the comments and examples to this section suggest that this rule is targeted at those who are responsible for the safety and protection of institutionalized persons. The facts of this case do not concern an institutionalized person.

*Family Ins. Co.*, 191 Wis. 2d 462, 471–73, 529 N.W.2d 594, 597–98 (1995) (negligence claim against parents for injury committed by their child premised upon the parents' failure to warn school authorities that the parents had stopped the child's medication and for their concomitant failure to control the child).

Nonetheless, even where the claims are concurrently alleged, the basis for the claims rests upon discrete and separate failings by the alleged tortfeasor. *See id.* Here, the failure to warn claim rests on the fact that Bubner failed to advise Tara's parents of the risk which Michael posed. Had that been done, Tara's parents could have taken appropriate action to avoid the risk of harm. This failure to warn claim is separate and distinct from the further claim that Bubner failed to properly supervise Michael and Tara while both children were under his custody and control. While the genesis of both claims lies in the risk which Michael posed and of which Bubner was aware, the resulting duties to Bubner are manifestly different—warn Tara's parents and properly supervise the children.

Second, the fact that a claim might raise public policy concerns in a different hypothetical setting does not per se require rejection of the claim in the instant case. A court may properly set limits on the reach of its decision. *Nieuwendorp* represents just such a case. There, the defendant's insurer argued that parents "should not live in fear of being sued over [their] personal medical treatment decisions" regarding their children. *Id.* at 478, 529 N.W.2d at 601. As such, the insurer contended that "there would be no just stopping point because an affirmative duty on parents to chemically control their children could conceivably include every tort committed by every child. This could potentially open a flood gate of new litigation and cre-

ate a cause of action where there should not be one." *Id*. at 480, 529 N.W.2d at 601–02.

The supreme court responded, "American Family's predictions of legal chaos notwithstanding, we are not persuaded that our decision today will have this effect on the law. *This belief is based upon the perception that the case at hand is very fact-specific and cannot be read to force parents to medicate their children against their will*." *Id*. (emphasis added). This case is also fact-specific. Michael was under Bubner's custody and control. Bubner knew of the danger which Michael posed to other children. Tara was visiting at Bubner's home while Bubner was in a supervisory capacity. Those facts do not portend a torrent of future litigation with no sensible stopping point.

■

Every cause of action has its public policy limitations, *see Rockweit* 197 Wis. 2d at 425–26, 541 N.W.2d at 749–50, and the law will declare those limits when the appropriate case is encountered. But the facts of this case do not present the outer reaches of a failure to supervise claim. We simply hold that under the facts alleged in the complaint, Bubner had a duty to supervise the children and to control Michael.

## CONCLUSION

We conclude that the circuit court properly dismissed Tara's parents' failure to warn claim as a matter of public policy pursuant to *Kelli T-G*. We therefore affirm that portion of the circuit court's order. However, based on the facts of the case before us, we hold that the complaint alleges sufficient facts to establish that Bubner had a duty to supervise Michael and Tara and a duty to control Michael. We therefore reverse the circuit court's dismissal of the parents' fail-

ure to supervise claim. We remand for further proceedings on this claim.

Costs are denied to all parties.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.