2003 WY 11

Kenneth Wayland DANIELS, individually and by and through his parent and guardian, Cynthia Rice, Appellants (Plaintiffs),

v.

Marilyn and David CARPENTER, Appellees (Defendants).

No. 01–224.

Supreme Court of Wyoming.

Jan. 28, 2003.

Richard K. Blundell of the Law Office of Richard K. Blundell, Greeley, Colorado; and Tom Sedar, Casper, Wyoming, Representing Appellants.

S.B. Freeman, III of Bormuth & Freeman, LC, Cody, Wyoming, Representing Appellees.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] This is an appeal from the district court's dismissal of the appellant's complaint for failure to state a claim upon which relief can be granted and its denial of appellant's motion for leave to amend the complaint. We affirm the dismissal because the complaint did not allege facts that would entitle the appellant to relief. We affirm the denial because the appellant did not support his oral motion with facts justifying amendment.

## ISSUES

[¶ 2] The issues presented by the parties can conveniently be restated as follows:

1. Whether Wyoming law imposes a duty upon the appellees, under the circumstances of this case, to protect the appellant from harm caused by an intoxicated minor social guest?

2. Whether the district court abused its discretion in denying the appellant's motion for leave to amend the complaint?

---

\* Chief Justice at time of expedited conference.

1. In the record, the appellant's last name is spelled both "Daniel" and "Daniels." We will use "Daniels" since that is the spelling used in the Notice of Appeal.

2. The complaint names one of the teenaged boys as Ryan Carpenter. Although it is not made

## FACTS

[¶ 3] Since this appeal results from the granting of a W.R.C.P. 12(b)(6) motion, we will accept the facts set forth in the complaint as true and will view those facts in the light most favorable to the appellant. *Feltner v. Casey Family Program*, 902 P.2d 206, 207 (Wyo.1995). On May 10, 1997, Kenneth Daniels [1] (the appellant), Michael T. Jefferson (Jefferson) and other teenaged boys spent the night in a trailer or camper "on land owned by, in the control of, and resided upon by" David and Marilyn Carpenter (the appellees). During the night, Jefferson became highly intoxicated. At about 5:00 a.m., some of the boys, including the appellant, Jefferson, and Ryan Carpenter (Carpenter), left the appellees' property.[2] After leaving the property, the boys borrowed a car from Anthony Pacino. At about 6:58 a.m., with Jefferson driving, the car left the road at a high rate of speed and wrecked. Jefferson and Carpenter were killed and the appellant was injured. Jefferson's blood alcohol content at the time of the accident was 0.09%.

[¶ 4] Based on these facts, the appellant sued the appellees, alleging (1) the appellees had a duty to control and supervise the actions of the teenagers; (2) the appellees knew or should have known that Jefferson was intoxicated; (3) the appellees breached their duty to control and supervise Jefferson by allowing him to drink alcoholic beverages and then allowing him to leave their home and drive a vehicle while he was intoxicated; and (4) the appellees' negligent control and supervision of Jefferson was a direct and proximate cause of the appellant's injuries.

[¶ 5] The appellees separately filed motions to dismiss the complaint under W.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[3] The motions, which are identical, contend that (1) the accident did not occur on the appellees' property; (2) the appellees did not own the

---

clear in the complaint, Ryan is referred to in the briefs as the appellees' son.

3. Statements within the motions suggest that separate motions were filed because the appellees no longer are husband and wife.

vehicle that wrecked; (3) Jefferson was not the appellees' son; (4) Jefferson was driving the car for his own purposes and was not on a mission for the appellees; (5) Jefferson and the other teenagers were acting without the appellees' consent or knowledge; and (6) therefore, the appellees owed no statutory or common law duty to the appellant to protect him from the accident that caused his injuries.

[¶ 6]   The district court granted the appellees' motions to dismiss, finding that the facts set forth in the complaint did not establish circumstances that would create a duty owed by the appellees to the appellant. The district court also denied the appellant's motion for leave to amend the complaint. This appeal followed.

## DISCUSSION

### W.R.C.P. 12(b)(6) DISMISSAL

■   In pursuing review of an order dismissing a complaint, we accept all facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Gillis v. F & A Enterprises*, 934 P.2d 1253, 1254–55 (Wyo.1997). In *Gillis*, we reiterated that dismissal is a drastic remedy which should be granted sparingly. We sustain a dismissal pursuant to W.R.C.P. 12(b)(6) only when it is certain from the face of the complaint that the plaintiff cannot allege any facts that would entitle him to relief.

*Garnett v. Brock*, 2 P.3d 558, 562 (Wyo.2000). *See also Duncan v. Afton, Inc.*, 991 P.2d 739, 741–42 (Wyo.1999) and *Johnson v. Aetna Cas. & Sur. Co. of Hartford, Conn.*, 608 P.2d 1299, 1302 (Wyo.1980).

[¶ 7]   The appellant begins his argument that the appellees owed him a duty in this case by turning to this Court's statement that "[t]he Wyoming common law of negligence imposes a duty on the defendant to exercise the degree of care required of a reasonable person in light of all the circumstances." *McClellan v. Tottenhoff*, 666 P.2d 408, 411 (Wyo.1983). He then cites the same case for a further explication of the same principle:

" ' * * * One owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.' *Kirby v. Sonville*, 286 Or. 339, 594 P.2d 818, 821 (1979). * * * "

*McClellan*, 666 P.2d at 412 (*quoting Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135, 137 (1980)).

[¶ 8]   The appellant bolsters his position by referring to various sections of the Restatement (Second) of Torts. Restatement (Second) of Torts § 314A (1965), for example, describes several non-exclusive special relationships that may give rise to a duty to aid or protect a third person, including common carrier and passenger, innkeeper and guest, and possessor of land held open to the public and invited guest. More pertinent to the instant case is Restatement (Second) of Torts, *supra*, § 315, which describes a duty to control the actions of a third person to prevent harm to another:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

[¶ 9]   The sections that follow Restatement (Second) of Torts, *supra*, § 315 describe situations where an actor has a duty to control the conduct of a third person. Two of those sections describe situations that bear some resemblance to the case at hand. Restatement (Second) of Torts, *supra*, § 316 provides:

A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts, *supra*, § 318 provides:

If the actor permits a third person to use lands or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control.

And finally, Restatement (Second) of Torts, *supra*, § 324A provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

[¶ 10] One example of a case wherein a duty was based upon these Restatement principles is *Gritzner v. Michael R.*, 228 Wis.2d 541, 598 N.W.2d 282 (1999). In *Gritzner*, a minor was sexually molested by another minor while playing at the latter's home. The Wisconsin Court of Appeals found "it self-evident that an adult who voluntarily takes on the supervision, custody or control, even on a temporary basis, of a visiting child ..., stands in a special relationship to such child for purposes of the child's 'protection' under § 314A of the Restatement." *Gritzner*, 598 N.W.2d at 287–88. In reversing the dismissal of the victim's negligence action against the parent of the perpetrator, the court also found that a duty of protection existed under Restatement (Second) of Torts, *supra*, § 324A. *Gritzner*, 598 N.W.2d at 289. It is noteworthy that the potential liability of the homeowner in *Gritzner* did not arise from the concept of premises liability, but from the special relationship. *Id.* at 288.[4]

■ [¶ 11] Under different facts, a similar result was reached in *Morgan v. Perlowski*, 508 N.W.2d 724 (Iowa 1993). While attending a "beer party" at Perlowski's mother's house, Morgan was assaulted by another guest. *Id.* at 725–26. In Morgan's negligence action against Perlowski, a question arose as to the proper source of any duty Perlowski owed Morgan. Rejecting a premises liability theory, the Iowa Supreme Court held that the duty arose out of the special relationship concepts of Restatement (Second) of Torts, *supra*, §§ 315 and 318. *Morgan*, 508 N.W.2d at 726–28. In adopting the principles of Restatement (Second) of Torts, *supra*, § 318, the court held that "[a]s a matter of public policy, it is reasonable to impose a limited duty upon a possessor of land, who is present on the land, to control the conduct of social guests." *Morgan*, 508 N.W.2d at 728. The court then concluded that it was a jury question whether Perlowski knew or should have known he had the ability to control the assaulting guest and whether he knew or should have known of the necessity and opportunity to exercise such control. *Id.*[5] *See also Chavez v. Torres*, 128 N.M. 171, 991 P.2d 1, 5–6 (1999). For a

---

4. In a subsequent appeal, the Wisconsin Supreme Court said the focus in analyzing special relationship cases should not be upon duty, inasmuch as "every person is subject to a duty to exercise ordinary care in all of his or her activities." *Gritzner v. Michael R.*, 235 Wis.2d 781, 611 N.W.2d 906, 912 (2000). Instead, the focus should be upon the question of whether public policy considerations preclude liability under the circumstances. *Id.* at 914.

5. The holding in *Morgan* was abrogated five years later to the extent that the distinction in premises liability cases between invitees and licensees was abrogated. *Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602, 606 (Iowa 1998).

duty to arise under Restatement (Second) of Torts, *supra*, § 318, harm must have been reasonably foreseeable by the homeowner. *Anthony H. v. John G.*, 415 Mass. 196, 612 N.E.2d 663, 666 (1993).

[¶ 12] As an alternative theory of liability, the appellant also contends that the appellees stood *in loco parentis* and had assumed the parental duty to control the teenagers who were staying overnight on their property.[6] Without citation to any particular authority, the appellant simply argues that this theory supports a finding that the appellees had a duty to the minors.

[¶ 13] This Court, and the Wyoming State Legislature, have both previously dealt with the tort of social host or vendor liability for harm caused by an intoxicated person.[7] In *Parsons v. Jow*, 480 P.2d 396, 397 (Wyo. 1971), this Court stated that there was no common law cause of action against a liquor vendor in favor of one injured by an intoxicated vendee because proximate cause was deemed to be the vendee's consumption, not the vendor's sale. We also said that any change in that rule was up to the legislature. *Id.* at 398. Twelve years later, in *McClellan*, 666 P.2d at 410–12, we reversed ourselves and acknowledged a cause of action based on common law negligence.[8] We further held that statutes forbidding the sale of alcohol to minors were meant not only to protect minors, but also to protect the general public, and that violation of such statutes is evidence of negligence. *Id.* at 413.

[¶ 14] The primary holding of *McClellan* was legislatively abrogated in 1985 with passage of a statute specifically limiting the liability of alcohol providers. 1985 Wyo. Sess. Laws ch. 205, § 1. The statute was modified in 1986. 1986 Wyo. Sess. Laws ch. 6, § 1. In pertinent part, it provides that "[n]o person who has legally provided alcoholic liquor or malt beverage to any other person is liable for damages caused by the intoxication of the other person." Wyo. Stat. Ann. § 12–8–301 (LexisNexis 2001). The clear intent of the act is to immunize both vendors and social hosts from liability for damages caused by persons to whom alcohol has legally been provided. In that regard, it is not legal for a person to provide alcohol to a minor who is not his "legal ward, medical patient or member of his own immediate family...." Wyo. Stat. Ann. § 12–6–101(a) (Lexis 1999).

[¶ 15] In the context of the present case, the effect of this statute is to allow the appellant to pursue a cause of action against the appellees if it can be shown that they provided alcohol to the teenaged boys. So, without the statute, there is certainly no legislative bar to such an action. The question remains, however, where there is no allegation that the appellees, themselves, provided the alcohol, what facts might sustain a cause of action against them? In other words, under what circumstances should the appellees be seen to have had a duty to protect the appellant?

[¶ 16] Broadly speaking, "[a] duty may arise by contract, statute, common law, or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff." *Hamilton v. Natrona County Educ. Ass'n*, 901 P.2d 381, 384 (Wyo.1995). One such relationship is the parent/child relationship. In *Sare v. Stetz*, 67 Wyo. 55, 214 P.2d 486, 487 (1950), we rejected the family purpose doctrine, under which a parent, as owner of a car, may be held liable for the negligence of a child who drives the car. In doing so, we held that " '[a] parent is not liable for the tort of his minor child merely from the relationship.' " *Id.* at 488 (*quoting Arkin v. Page*, 287 Ill. 420, 123 N.E. 30, 31 (1919)). We reached a similar conclusion in *Kimble v. Muller*, 417 P.2d 178, 180 (Wyo.1966), where we said:

---

6. *In loco parentis* is a Latin phrase meaning "in the place of a parent" or "[a]cting as a temporary guardian of a child." Black's Law Dictionary 791 (7th ed.1999).

7. The parameters of such a tort are greatly debated. *See* Edward L. Raymond, Jr., Annotation, *Social Host's Liability for Injuries Incurred by Third Parties as a Result of Intoxicated Guest's Negligence*, 62 A.L.R.4th 16 (1988).

8. The specific holding was that "a vendor of liquor owes a duty to exercise the degree of care required of a reasonable person in light of all the circumstances." *McClellan*, 666 P.2d at 412.

For us to hold the father in this instance liable for his son's negligence, because the father permitted the son to use the car, would be equivalent to holding that every parent is liable for every tort of a child. *See also Hatch v. O'Neill*, 133 Ga.App. 624, 212 S.E.2d 11, 13 (1974) ("[a] mother is not negligent in simply failing to keep a constant and unremitting watch and restraint over her children") and *Paige v. Bing Const. Co.*, 61 Mich.App. 480, 233 N.W.2d 46, 49 (1975) ("impossibility of a parent knowing what a child is doing at all times—despite utmost vigilance").

[¶ 17] Clearly, the parental relationship, without more, is not sufficient to make a parent liable in tort for the conduct of his or her child. That is analogous to the principle that a social host, even when acting *in loco parentis*, is not necessarily liable in tort for the conduct of his or her minor social guests. The question that must be answered is this—what is the "something more" that must exist in circumstances such as those in the instant case before a duty arises on the part of a social host to protect third parties from harm caused by an intoxicated minor guest? Some courts have said the answer lies in the host's knowledge of the minor's propensity to engage in the specific dangerous activity:

When a person has not furnished the instrumentality but through negligence allowed access thereto to a child, the standard for imposing liability upon the person is whether the person knew of the child's proclivity or propensity for the specific dangerous activity which caused the harm.... If such knowledge cannot be shown on the part of the parent, then liability cannot attach....

. . .

... We hold that the [parents] were not negligent in simply failing to keep a constant and unremitting watch and restraint over their children, or over other children with whom their children were playing.

*Dennis by Evans v. Timmons*, 313 S.C. 338, 437 S.E.2d 138, 141 (1993). Similarly, in *Manuel v. Koonce*, 206 Ga.App. 582, 425 S.E.2d 921, 923–24 (1992), parents who did not furnish alcohol to their son and his minor guests, who were absent from their home, and who had no reason to anticipate that their son and his minor guests would obtain alcohol, were not liable for personal injuries and deaths caused by a minor driver to whom their son had provided alcohol. Specifically, the Georgia Court of Appeals found no evidence that the parents "knew or should have known" that their son had a propensity to provide alcohol to underage guests at their home. *Id.* at 923.[9] *See also Gritzner*, 598 N.W.2d at 289 (duty arose under Restatement (Second) of Torts, *supra*, § 324A where parent had prior knowledge of son's propensity to sexually abuse other children) and *Garrison Retirement Home Corp. v. Hancock*, 484 So.2d 1257, 1262 (Fla.App.1985) (defendant, who had knowledge of resident's poor driving capabilities, had duty to protect others).

[¶ 18] In *Austin v. Kaness*, 950 P.2d 561 (Wyo.1997), we considered the specific question of the liability of homeowner parents to a third party injured by an intoxicated social guest who had obtained alcohol in the parents' home, not from them, but from their adult son. Because the son was not a minor, and because he did not reside in his parents' home, the question of the parents' liability was presented under theories of agency and *respondeat superior*. *Id.* at 563–64. We found that the parents were not liable for their son's conduct because, even if he were considered an employee or agent, the act of throwing a "beer party" was clearly outside the scope of his duties. *Id.* at 564.

[¶ 19] Several courts have recognized a limited cause of action where an intoxicated social guest harms a third party. For example, in *Cravens v. Inman*, 223 Ill.App.3d 1059, 166 Ill.Dec. 409, 586 N.E.2d 367, 377–78 (1991), the court stated:

We agree with plaintiff's assertion that this court should, under the precise facts of the instant cause, adopt the view of other

9. In *Riley v. H & H Operations, Inc.*, 263 Ga. 652, 436 S.E.2d 659, 661 (1993), the Georgia Supreme Court underscored the fact that *actual* knowledge is not the test, and disapproved any suggestion in *Manuel* to the contrary.

states that have recognized social host negligence liability for automobile accident injuries caused by an intoxicated minor driver. We emphasize that our holding is limited to the facts alleged in plaintiff's pleading, *i.e.,* where (1) a social host has knowingly served alcohol, and permits the liquor to be served, to youths under 18 years of age at the social host's residence, (2) the social host permits the minors' consumption to continue to the point of intoxication, and (3) the social host allows the inebriated minors to depart from the residence in a motor vehicle. We express no opinion with respect to factual scenarios other than the one presented herein.[10]

These same factors, described somewhat differently, were also adopted in *Sutter v. Hutchings,* 254 Ga. 194, 327 S.E.2d 716, 719 (1985):

> We therefore find that the defendant hostess and her daughter owed a duty to those using the highways not to subject them to an unreasonable risk of harm by furnishing alcohol to a person under 19 who was noticeably intoxicated and who these defendants knew would soon be driving his car.[11]

[¶ 20] It should be recalled that, in *Parsons,* 480 P.2d at 397, this Court stated that there was no common law cause of action against a liquor vendor for negligence because the consumption, rather than the sale, of the alcohol was the proximate cause of any harm to third parties.[12] With the coming of comparative negligence, however, some courts see this as a question for the jury:

> We hold that, where there is sufficient proof at trial, a social host who negligently serves or furnishes intoxicating beverages to a minor guest, and the intoxicants so furnished cause the minor to be intoxicated or cause the minor's driving ability to be impaired, shall be liable to third persons in

the proportion that the negligence in furnishing the beverage to the minor was a substantial factor in causing the accident or injuries, as may be determined under the rules of comparative negligence.

*Koback v. Crook,* 123 Wis.2d 259, 366 N.W.2d 857, 865 (1985).[13] The key element in this analysis of causation is foreseeability.

We turn now to the question of proximate cause. Under many circumstances the act which is *the* proximate cause of the damage resulting from a breach of duty relating to alcohol is the act of the consumer of the alcohol. Under such circumstances, the consumer is solely liable because the act of furnishing the alcohol is too remote to be the proximate cause of the negligence of the consumer.... That is to say, the subsequent act of the consumer is not foreseeable to the provider, or the consumption of an excessive amount of alcohol is the intervening (unforeseeable) cause of the damage.

However, where one provides alcohol to a noticeably intoxicated 17–year–old knowing that he will soon be driving his car, it is foreseeable to the provider that the consumer will drive while intoxicated and a jury would be authorized to find that it is foreseeable to the provider that the intoxicated driver may injure someone. That is to say, a jury would be authorized to find that providing alcohol to a noticeably intoxicated 17–year–old automobile driver was one of the proximate causes of the negligence of the driver and of the injuries to the deceased.

*Sutter,* 327 S.E.2d at 719 (emphasis in original and footnote omitted). Furthermore, for such a duty to arise, the foreseeable harm need not be known with specificity:

> " '... The duty of any person is the obligation of due care to refrain from any act which will· cause foreseeable harm to

---

10. *Cravens* was overturned in *Charles v. Seigfried,* 165 Ill.2d 482, 209 Ill.Dec. 226, 651 N.E.2d 154, 164 (1995), because the Illinois Supreme Court concluded that the entire field of liability for providing alcohol had been pre-empted by the legislature.

11. *Sutter* has been abrogated on other grounds. *See Riley,* 436 S.E.2d at 660–61.

12. For purposes of this discussion, we see no distinction between vendors and social hosts.

13. The *Koback* decision was soon thereafter legislatively abrogated. *Kwiatkowski v. Capitol Indem. Corp.,* 157 Wis.2d 768, 461 N.W.2d 150, 152–53 (1990).

others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. . . .

" 'A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs.' "

*Koback*, 366 N.W.2d at 863 (*quoting Olsen v. Copeland*, 90 Wis.2d 483, 280 N.W.2d 178, 184 (1979) (Day, J., dissenting)).

▬ [¶ 21] The sampling of opinions cited herein reveals the extent to which courts have gone to establish liability on the part of social hosts for harm caused by their intoxicated guests. Premises liability, parental liability, *respondeat superior*, agency, special relationships, gratuitous undertaking, and common law negligence—these theories have all been advanced to provide the underpinnings for such a tort. In truth, the answer lies in a principle to which we have turned in the past in determining the existence of a duty in a negligence case—duty exists where society says it ought to exist.

"Essential to any negligence cause of action is proof of facts which impose a duty upon defendant. *See, ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 931 (Wyo.1981). The question of the existence of a duty is a matter of law for the court to decide. *Id.*, at 932. A duty exists where, 'upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant.' Prosser and Keeton on Torts § 37 at 236 (5th ed.1984)."

*Duncan*, 991 P.2d at 742 (*quoting Goodrich v. Seamands*, 870 P.2d 1061, 1064 (Wyo. 1994)). Deciding whether a legal obligation should be imposed involves a balancing of certain identified factors:

When this Court has considered whether a duty should be imposed based on a particular relationship, we have balanced numerous factors to aid in that determination:

"(1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved."

*Duncan*, 991 P.2d at 744 (*quoting Ortega v. Flaim*, 902 P.2d 199, 203, 206 (Wyo.1995)) (footnote omitted). This is a test for the imposition of a duty under the general theory of common law negligence and it does not require the existence of a relationship recognized under some specialized theory such as premises liability or agency. Instead, it is the same theory set forth in *McClellan*, 666 P.2d at 412 (*quoting Alegria*, 619 P.2d at 137), whereby a duty of reasonable care exists to avoid injury to another person where it " 'could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.' "

▬ [¶ 22] People who *legally* provide alcoholic liquor or malt beverages to another person are immunized under Wyo. Stat. Ann. § 12–8–301(a) against liability for damages that may be caused by the intoxication of that other person. Under Wyo. Stat. Ann. § 12–6–101(a), it is *illegal* to provide alcoholic liquor or malt beverages to minors, except in certain limited circumstances not pertinent here. Wyo. Stat. Ann. § 12–8–301(c) makes it clear that the immunity provision does not affect liability where the alcoholic liquor or malt beverage is provided in violation of Title 12. Taken together, these statutory sections reflect the legislature's recognition that, where alcohol is illegally provided to a minor, the person providing the alcohol may become liable for injuries resulting from that minor's resulting intoxication. Consequently, there

is no statutory deterrent to a finding by this Court that a common law cause of action for social host liability exists under the appropriate circumstances.

[¶ 23] This is not the case in which to make that determination. Neither party applied the *Duncan* factors to the facts of this case. We are not inclined to pursue that task on our own initiative. Furthermore, the appellant's complaint lacked several allegations that seem to be universally required where a tort duty has been recognized in such circumstances. First, there is no liability unless the defendant parents/homeowners provided the alcohol to the minor guests or, at least, they knew or should have known alcohol was being provided to the minor guest. Second, there is no liability unless the parents/homeowners knew or should have known that the minor guest was drinking to the point of intoxication. And third, there is no liability unless the parents/homeowners knew or should have known that the minor guest would soon be driving an automobile. In other words, the mere failure of parents/homeowners to supervise the minors does not, without more, create a duty to protect third parties from harm caused by an intoxicated minor driver under these circumstances.[14] *See Sutter,* 327 S.E.2d at 719; *Charles v. Seigfried,* 251 Ill.App.3d 1059, 191 Ill.Dec. 431, 623 N.E.2d 1021, 1024 (1993), *rev'd,* 165 Ill.2d 482, 209 Ill.Dec. 226, 651 N.E.2d 154, 159 (1995) (reversed on ground that state's dramshop act had pre-empted the field); *Cravens,* 166 Ill.Dec. 409, 586 N.E.2d at 378; *Bowling v. Popp,* 536 N.E.2d 511, 514 (Ind.App.1989); *Fullmer v. Tague,* 500 N.W.2d 432, 435 (Iowa 1993); *Spears v. Bradford,* 652 So.2d 628, 632 (La.App.1995); *O'Flynn v. Powers,* 38 Mass.App.Ct. 936, 646 N.E.2d 1091, 1092 (1995); *Hart v. Ivey,* 332 N.C. 299, 420 S.E.2d 174, 178 (1992); *Daniel v. Reeder,* 16 S.W.3d 491, 495 (Tex.App.2000); and Edward L. Raymond, Jr., Annotation,

*Social Host's Liability for Injuries Incurred by Third Parties as a Result of Intoxicated Guest's Negligence,* 62 A.L.R.4th 16, §§ 8–9, 13, 17–19 (1988).

[¶ 24] It was not an abuse of discretion for the district court to dismiss appellant's complaint for failure to state a claim upon which relief can be granted. The complaint failed to allege the minimal facts that would support a cause of action under these circumstances. Perhaps the most noticeable deficiency is any allegation that the appellees knew or should have known that Jefferson would soon be driving a car. Nowhere in the record is there even a suggestion, let alone any evidence, to contradict the complaint's own implication that the boys left the appellees' premises **on foot.** Consequently, there is likewise nothing in the record to support any inference that the appellees knew or should have known that Jefferson would later be driving a vehicle. Similarly, there is not a hint in the complaint as to the source of the alcohol that Jefferson drank that night. An allegation of failure to supervise minors, without more, is not sufficient.

## MOTION FOR LEAVE TO AMEND COMPLAINT

[¶ 25] W.R.C.P. 15(a) provides, in pertinent part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires.*

---

14. The complaint does contain the unsupported allegations that the appellees knew or should have known that Jefferson was intoxicated, that the appellees allowed Jefferson to drink alcoholic beverages, that the appellees allowed Jefferson to leave and drive a vehicle while intoxicated, and that the appellees negligently supervised the teenagers. Glaringly absent from the complaint, however, are any factual allegations, as opposed to conclusions and speculation, suggesting that the appellees, themselves, supplied the alcohol, or that they knew or should have known that the boys had obtained alcohol, or that they had any reason to anticipate that their son or the other minors would obtain alcohol, or that they knew or should have known that the boys would leave the premises by foot and borrow someone else's car while intoxicated.

(Emphasis added.) The decision whether to allow a pleading to be amended is left to the sound discretion of the district court and is subject to reversal only for an abuse of that discretion. *Rose v. Rose,* 576 P.2d 458, 459 (Wyo.1978). "Judicial discretion is 'a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *Herbel v. S.K. Wood Co.,* 897 P.2d 478, 480 (Wyo.1995) (*quoting Martin v. State,* 720 P.2d 894, 897 (Wyo.1986)). The basic guideline for the exercise of discretion in ruling on a W.R.C.P. 15(a) motion is whether the amendment will prejudice the other party. *Rose,* 576 P.2d at 459.

[¶ 26] In the absence of undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, leave to amend a pleading should liberally be granted. *Beaudoin v. Taylor,* 492 P.2d 966, 970 (Wyo.1972) (*quoting Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). The movant has the responsibility to produce the evidence that clearly shows an abuse of discretion. *Dynan v. Rocky Mountain Federal Sav. and Loan,* 792 P.2d 631, 640 (Wyo.1990).

[¶ 27] Upon hearing that the district court intended to grant the appellees' motion to dismiss, appellant's counsel orally moved for leave to amend the complaint. As justification for such an amendment, counsel presented the following arguments:

> [APPELLANT'S COUNSEL]: Yes, sir. Your Honor, the problem that exists is: When we got this case, it had been with an attorney up there in Powell for about four years, and it was—the statute of limitations has now run. So if we're not allowed to amend, this case would be, for all intent and purpose, over.
>
> * * *
>
> [APPELLANT'S COUNSEL]: ... It would be our contention that they knew or should have known that alcohol was being consumed by those children. And what I will do and what I intend [to] do is go back to my client, who was one of the few people who survived that party that night,

and I will very specifically ask him where—what's going on with the alcohol. When we have talked to him about it in the past, he's been unable to tell us, probably because he's trying to protect someone.

> But I would not refile this with the facts that we have. I would not even amend. But if we have facts that support—now that I understand the Court's ruling—that the Carpenters were either privy to alcohol being given out, or, consistent with some of the case law I've given you, had alcohol available to the children, then we would most certainly come back and amend the complaint in that situation.
>
> And, Your Honor, I think that time their duty would arise out of the fact that they knew or should have known that those children were drinking, and I think they do have a duty to control that if they have guests at their house that are minors.

[¶ 28] The district court considered these arguments, and the appellees' response thereto, and then orally denied the motion for leave to amend. First, the district court concluded that the appellees' contentions as to a lack of duty continued to be correct. Second, the district court found that the motion was not timely. The district court noted that the complaint had been filed on June 28, 2001, and the motion to dismiss had been filed on August 22, 2001. The hearing took place on September 24, 2001. The appellant had three months after the filing of the complaint, and one month after the filing of the motion, during which he could have made some attempt to correct any deficiencies in the filed complaint. Apparently, no effort was made to do so. The district court noted that, normally, a motion for leave to amend is accompanied by a copy of the proposed amended pleading.

[¶ 29] There is little guidance within W.R.C.P. 15(a), itself, to aid the district court in its exercise of discretion when a motion to amend the pleadings is made. In interpreting the phrase, "when justice so requires," this Court has focused on two concepts: first, whether the movant has been guilty of bad faith or dilatory motive, or similar conduct, and, second, whether the amendment will unduly prejudice the opposing party. *In re*

*Paternity of IC,* 941 P.2d 46, 50 (Wyo.1997) (*quoting Hernandez v. Gilveli,* 626 P.2d 74, 77 (Wyo.1981)); *Johnson,* 608 P.2d at 1303; *Beaudoin,* 492 P.2d at 970. We have also said that amendment should be allowed when it " 'will serve a good purpose....' " *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 226 (Wyo.1994) (*quoting Herrig v. Herrig,* 844 P.2d 487, 490 (Wyo.1992)).

[¶ 30] We cannot say that the district court abused its discretion in denying the appellant's motion to amend. While we may not have characterized the deficiencies in the motion exactly as the district court did, we may affirm the decision on any legal ground appearing in the record. *Litzenberger v. Merge,* 698 P.2d 1152, 1153 (Wyo.1985); *Mentock v. Mentock,* 638 P.2d 156, 159 (Wyo. 1981). We affirm here because the motion to amend the complaint was not so much a legitimate request to add allegations that might establish a cause of action as it was an attempt to avoid the statute of limitations while the appellant belatedly commenced a basic investigation of his own case. The accident happened in May of 1997. The complaint was not filed until four years later. The motion was not heard for a month after it was filed. During the interim, the appellant or his attorneys apparently failed to discover the operative facts necessary to state a cause of action.

[¶ 31] In moving to amend the complaint, counsel did not inform the district court of the proposed particulars of the amendment.[15] All that was offered was the hope that, if facts could be developed to support a cause of action, an amended complaint would be filed. Ironically, counsel's statements suggest that the failure to obtain the necessary information was partly the fault of the appellant, himself, who refused to divulge the source of the alcohol. This simply is not a sufficient basis for amending a complaint.

[¶ 32] Finally, we note that the motion for leave to amend the complaint drew from the appellant but one sentence in his brief: "At a minimum, Appellants should be given an opportunity to amend their Com-

plaint so as to more specifically allege breaches of the foregoing 'special relation' duties of care by Appellees, pursuant to this Court's liberal amendments policies." This type of perfunctory argument usually results in our refusal to consider the issue. *Mt. Rushmore Broadcasting, Inc. v. Statewide Collections,* 2002 WY 39, ¶ 12, 42 P.3d 478, 482 (Wyo.2002); *40 North Corp. v. Morrell,* 964 P.2d 423, 427 (Wyo.1998); *Scherling v. Kilgore,* 599 P.2d 1352, 1359 (Wyo.1979). However, because dismissal of a complaint for failure to state a cause of action is such a drastic remedy, and because the denial of a motion for leave to amend the complaint is, in effect, the death knell for the case, we have considered the latter issue despite the fact that the appellant presented no legal authority or cogent argument.

### CONCLUSION

[¶ 33] It was not error for the district court to grant the appellees' motions to dismiss because the complaint did not contain the minimal factual allegations to state a cause of action. It was also not error by the district court to deny the appellant's motion for leave to amend the complaint because the motion resulted from the appellant's own dilatory conduct and was not made for a proper purpose.

[¶ 34] Affirmed.

---

15. There is some authority for the proposition that the proposed amended pleading must accompany a motion to amend. *See Bownes v. City* *of Gary, Ind.,* 112 F.R.D. 424, 425 (N.D.Ind. 1986). The appellees mentioned, but did not develop an argument on this proposition.